**Audrey Phillips SCHREINER, Appellant,**

v.

**Charles SCHREINER, III, Appellee.**

**No. 15221.**

Court of Civil Appeals of Texas, San Antonio.

Nov. 7, 1973.

Rehearing Denied Dec. 5, 1973.

Pat Maloney, San Antonio, for appellant.

Joe W. Burkett, Jr., Kerrville, Kampmann, Church, Burns & Brenan, San Antonio, for appellee.

KLINGEMAN, Justice.

Appellant, Audrey Phillips Schreiner, appeals from the judgment entered after a nonjury trial granting her a divorce, awarding custody of two minor children to her, providing for child support payments of $200 per month for each child, granting her attorney's fees in the amount of $60,000 and other expenses incident to said divorce suit, and making a partition and division of the property of the parties. The original petition for divorce was filed by Charles Schreiner, III, the appellee herein, in Kerr County, Texas, on September 1, 1970; and judgment was signed and entered on March 2, 1973. The trial court filed extensive findings of fact and conclusions of law.[1] Appellant is sometimes

1. The material findings of fact and conclusions of law may be summarized as follows: *Findings of Fact*: (a) That at the time the instant suit was filed, appellee resided in the state of Texas for more than one year immediately preceding the filing thereof, and in Kerr County, Texas, for more than six months, immediately preceding the filing thereof, at his residence on the YO Ranch. (b) That following the marriage of the parties, they resided on what is called the YO Ranch in Kerr County, Texas, until 1960, except for approximately three years while they were out of state, and except for a period of time they lived in Kerrville, Texas. (c) That in 1961, the parties purchased a residence called the Argyle house in San Antonio, Texas, in which house they resided for a short time, after which appellant lived intermittently in the home of her mother in San Antonio, Texas. (d) That

appellee, from 1961 until February 25, 1970, was operating the YO Ranch in Kerr County and spending most of the time upon the ranch, but was commuting to San Antonio on weekends and at other times, and was staying in the home of his mother-in-law in San Antonio, Texas (except for the short time appellee and appellant resided in the Argyle house). (e) That on February 25, 1970, appellee separated permanently from appellant; and since that date, they have not lived together as man and wife; and since that date, appellee has resided permanently on the YO Ranch in Kerr County, Texas. (f) That the instant suit was filed by appellee in September, 1970, in Kerr County, Texas. (g) That appellee, Charles Schreiner, III, inherited from his father, Walter R. Schreiner, deceased, approximately 40,498.52 acres of land in Kerr County, Texas, as set out and described in Plaintiff's

herein referred to as respondent, and appellee, as petitioner.

By four points of error, appellant asserts that the trial court did not have jurisdiction and venue over this divorce proceeding in Kerr County, Texas. We first consider these points of error.[2]

 Appellee's petition for divorce was filed on September 1, 1970. Section 3.21 of the Texas Family Code, V.T.C.A.

Exhibit No. 3, being a judgment in Cause No. 3961, styled "IN THE MATTER OF THE ESTATE OF WALTER R. SCHREINER, DECEASED," in the 38th District Court of Kerr County, Texas, and as further described in Plaintiff's Exhibit No. 4, being a deed from the trustees under the last will and testament of Walter R. Schreiner, deceased, dated April 3, 1957, to Charles Schreiner, III, and which deed is of record in Volume 101, page 47, of the Deed Records of Kerr County, Texas. (h) That appellee, Charles Schreiner, III, inherited from the estate of Myrtle Schreiner, deceased, his mother, a life estate in approximately 25,-632.35 acres of land in Kerr County, Texas, as described in Plaintiff's Exhibit No. 3, being the judgment in Cause No. 3961, styled "IN THE MATTER OF THE ESTATE OF WALTER R. SCHREINER, DECEASED," in the 38th District Court of Kerr County, Texas, the remainder going to the four sons of the parties upon the death of appellee. (i) That during the marriage of the parties, there was a partnership between appellee, Charles Schreiner, III, and his mother, Myrtle B. Schreiner, called the YO Ranch Partnership, in which partnership Charles Schreiner, III, owned 56.87 per cent, which was community property of appellee and appellant except for the real estate, and Myrtle B. Schreiner owned 43.13 per cent. (j) That various improvements were made on land owned separately by appellee out of the YO Ranch Partnership funds. The trial court, in its findings of fact, found that improvements consisting mainly of houses, fences and windmills were made on lands owned separately by appellee out of YO Ranch Partnership funds amounting to approximately $322,500. The trial court credited the community assets of appellee and appellant with the proper share of such improvements. (k) That the value of the total community assets is $1,517,607.66. (l) That the total community indebtedness is $924,456.45. (m) That when the total community indebtedness of $924,456.45 is deducted from the total community assets of $1,517,607.66, the net community interest in all the property amounts to $593,151.21. (n) That one half of the net community interest belonging to appellee amounts to $296,575.60, and one half of the net community assets belonging to appellant amounts to $236,575.60. (o) That based upon the

financial circumstances of both appellee and appellant, the sum of $200 per month for each of the children under the age of eighteen years is a reasonable amount to be contributed by appellee for their support and maintenance. (p) That the sum of $60,000 is a reasonable amount to allow appellant as and for her attorney's fees incurred in this proceeding. (q) That the sum of $15,000 is a reasonable amount to allow the appellant as and for any expenses in connection with this proceeding.
*Conclusions of Law*: (a) That this court has jurisdiction and venue over this divorce proceeding in Kerr County, Texas. (b) That based upon the pleadings of appellant, Audrey Phillips Schreiner, and the evidence, appellant should be granted a divorce from appellee, Charles Schreiner, III. (c) Based upon appellant's present and future physical condition and her present and future financial needs, and because of the large outstanding community indebtedness, appellant should receive as part of her share of the community estate of the parties hereto, and in lieu of specific assets of the community estate, and in lieu of a homestead on the YO Ranch, the sum of $525,000. (d) That appellant, Audrey Phillips Schreiner, should receive as part of the $525,000 the 6.35 acres of land in Kendall County, Texas, at a valuation of $6,350, which would be a credit against said sum. (e) That appellee should be obligated to pay all outstanding notes, debts and other obligations of the community estate of the parties. (f) That appellee should receive all other assets of the community estate, including any interest of the community in and to any of appellee's separate real property, arising out of any improvements made thereto. (g) That appellant should be awarded the sum of $60,000 as reasonable attorney's fees, and the sum of $15,000 as reasonable expense in this proceeding. (h) That the evidence offered and introduced in the trial court was full and satisfactory in support of a divorce for appellant.

2. Although appellant contends by these points that the trial court was without jurisdiction to hear the divorce case, the primary prayer in her brief on appeal is that the judgment of the trial court should be corrected to award appellant an additional 33,065.44 acres of land.

(effective January 1, 1970) provides that no suit for divorce shall be maintained unless at the time the suit is filed the petitioner has been a domiciliary of this state for the preceding twelve-month period, and a resident of the county in which the suit is filed for the preceding six-month period. Section 3.21 of the Texas Family Code substantially follows the language of Article 4631, Vernon's Tex.Rev.Civ.Stat.Ann., its predecessor, with the principal distinction being the substitution of the word "domiciliary" for the word "inhabitant."[3] Under the record in this case, we do not deem the change in wording of any particular significance, and as appellant points out in her brief, it has always been the law in this state that to secure a divorce, you must be both a domiciliary of the state for a period of twelve months, and a resident of the county for the preceding six months.[4]

The provisions of the residency statute are not jurisdictional, but merely provide the necessary residential qualifications for bringing an action for divorce. Aucutt v. Aucutt, 122 Tex. 518, 62 S.W.2d 77 (1933); Simonsen v. Simonsen, 414 S.W.2d 54 (Tex.Civ.App.—Amarillo 1967, no writ); Nowell v. Nowell, 408 S.W.2d 550 (Tex.Civ.App.—Dallas 1966, writ dism'd, cert. denied 389 U.S. 847, 88 S.Ct. 53, 19 L.Ed.2d 116 [1967]); Perusse v. Perusse, 402 S.W.2d 931 (Tex.Civ.App.—El Paso 1966, no writ); Ingram v. Ingram, 380 S.W.2d 666 (Tex.Civ.App.—Dallas 1964, writ dism'd); Meyer v. Meyer, 361 S.W.2d 935 (Tex.Civ.App.—Austin 1962, writ dism'd).

The question of residency as a qualification for maintaining a divorce suit is a fact issue to be determined by the trial court, and the trial court's findings will not be disturbed on appeal unless there is a clear abuse of discretion. Stacy v. Stacy, 480 S.W.2d 479 (Tex.Civ.App.—Waco 1972, no writ); Meyer v. Meyer, supra; Earhart v. Earhart, 358 S.W.2d 878 (Tex.Civ.App.—San Antonio 1962, no writ); Vinson v. Vinson, 340 S.W.2d 562 (Tex.Civ.App.—Waco 1960, no writ).

It is to be remembered that in the judgment here involved, appellant, Mrs. Schreiner, was given a divorce from appellee. By the points of error here now under consideration, she now complains of the judgment granting the divorce. At no time, either prior to or during the trial, was any question ever raised as to the lack of jurisdiction of the trial court of Kerr County to consider and grant the divorce. The residential qualifications of appellee were never raised nor controverted by appellant by any pleading. In fact, prior to the trial of the case, appellant filed a pleading styled "RESPONDENT'S FIRST SUPPLEMENTAL ANSWER AND ALTERNATE PLEADING," in which pleading, among other things, she pled, "Alternatively, Respondent avers that if the Court determines that a decree of divorce should be entered that said decree should grant the divorce in favor of Respondent against Petitioner on the grounds of Petitioner's adulterous relationship with Pat Lopez and other acts of cruelty by Petitioner as set forth in Sections 3.03 and 3.02

3. The pertinent provisions of Article 4631, Tex.Rev.Civ.Stat.Ann., which was the predecessor in time to Section 3.21 of the Texas Family Code, are as follows: "No suit for divorce shall be maintained in the Courts of this State unless the petitioner for such divorce shall at the time of exhibiting his or her petition, be an actual bona fide inhabitant of this State for a period of twelve (12) months, and shall have resided in the county where the suit is filed for six (6) months next preceding the filing of same."

4. Black's Law Dictionary (Third Edition 1933) defines the word "inhabitant" as one who resides actually and permanently in a given place and has his domicile there. Such dictionary defines "domicile" as the place where a man has his true, fixed and permanent home and principal establishment and to which whenever he is absent he has the intention of returning. While "residency" signifies living in a particular locality, "domicile" means living in that locality with the intent to make it a fixed and permanent home. Vickerstaff v. Vickerstaff, 392 S.W.2d 559 (Tex.Civ.App.—El Paso 1965, no writ).

of the Family Code." During cross-examination during the trial, appellant testified, "In the event you grant the divorce I ask that you do it in my behalf because of said, 'Lopez,' and cruelty, and desertion which I have endured. That is what I ask."

In Prendergast v. Prendergast, 122 S. W.2d 710 (Tex.Civ.App.—Galveston 1938, no writ), the husband sued for divorce in Galveston County, Texas, and the wife filed a cross-action. Judgment was entered granting the wife a divorce, awarding the care and custody of one minor child to the wife, and another minor child to the husband. The wife contended on appeal that the record did not affirmatively show that testimony was adduced at the trial to show that the husband had been an actual bona fide inhabitant of Texas for more than twelve months and had resided in Galveston County, Texas, for more than six months next preceding the filing of the suit for divorce; and that this was fundamental error. The appellate court held that, appellant (wife) having answered the allegations of the husband's petition, and having invoked the jurisdiction of the court by filing a cross-action seeking affirmative relief, the district court of Galveston County, in which such case was originally filed, had jurisdiction of the parties and the subject matter of the suit, and that appellant (wife) is not now in any position to complain of the action of the trial court in this respect.

In Aucutt v. Aucutt, supra, Mabel Aucutt instituted suit in the district court of Lubbock County, Texas, against John W. Aucutt to obtain a divorce and to have a contract for settlement of property confirmed. The husband filed an answer and a cross-action seeking a divorce against his wife. In such cross-action, the husband did not allege that he had been an actual bona fide inhabitant of the state of Texas, nor that he had resided in Lubbock County for the required period of time. The wife, sometime thereafter, took a nonsuit. The husband proceeded to trial on the cross-action; and after a hearing, judgment was entered for the husband granting a divorce against plaintiff. The wife contended that the judgment was void because the court was without jurisdiction to hear and determine the cause, since the wife had taken a nonsuit, and the husband did not allege, nor did he prove, that he was a resident of Lubbock County, Texas, for the required period of time. The Commission of Appeals (judgment adopted by the Supreme Court) held that the district court of Lubbock County, the county in which the original petition was filed, had jurisdiction of the parties and the subject matter of the suit, even after the wife dismissed her divorce action; and that the husband had a right to continue to prosecute his cross-action for divorce after his wife's action for the same relief had been dismissed, and even though he had never resided in Lubbock County.

Under the circumstances hereinbefore set forth, it is our opinion that the district court of Kerr County, Texas, had jurisdiction of the parties and subject matter of this suit; and that appellant is not now in a position to complain of the action of the court in this respect.

In any event, we hold that there is sufficient evidence to uphold the trial court's judgment and findings that it had jurisdiction and venue over this divorce proceeding in Kerr County, Texas.

Appellee testified that after he and Mrs. Schreiner married, they lived on the YO Ranch in Kerr County in a house that was given to them by his mother; that they continued to reside there until sometime in 1954, when during the drought, they leased a ranch in Montana and moved some cattle there, staying there until about January of 1955, when they came back to the ranch; that they continued to live on the ranch until about 1956, when they bought a home in Kerrville, Kerr County, Texas, where they stayed about two or three years; that they then bought a larger home in Kerrville and moved to that house; that they continued to live there until sometime in

845

1961, when, because of Mrs. Schreiner's illness and other difficulties, they bought a large home on Argyle Street in San Antonio, where they stayed for a period of time; that Mrs. Schreiner was unhappy with such house and a great deal of time was spent at the home of her mother in San Antonio; that during the years of 1968 and 1969, they were living a substantial period of time in the back room of the home of his mother-in-law, and part of the time at the ranch; that on numerous occasions he requested and even insisted that they move back to the ranch in Kerr County; that during all this period of time, he was working on the ranch in Kerr County, and on the occasions when they were in San Antonio, he would drive back and forth from the ranch; that sometime in February, 1970, he decided that he had had enough of ". . . that family and Audrey . . ." and ". . . checked it to them and left . . ."; that on February 23, Mrs. Schreiner was in the hospital and he visited her, and a couple of days later, he took her back to her mother's, went back to the ranch, and moved out to Casa Grande; and that he has lived on the ranch ever since.

It appears clear from the evidence that both Mr. and Mrs. Schreiner have resided in, been domiciliaries of, and been bona fide inhabitants of, the state of Texas immediately preceding the filing of the petition for divorce herein for more than fifteen years; and there is evidence that appellee always desired and intended to make the YO Ranch his residence. Under the record, there is ample evidence that appellee has been a domiciliary of the state of Texas for more than twelve months immediately preceding the filing of the petition for divorce, and a resident of Kerr County for more than six months preceding such filing. Appellant's points of error Nos. 9, 10, 11 and 12 are overruled.

By the rest of her points of error, appellant complains of the property partition and division. She asserts that the trial court erred: (a) in admitting any proof as to the alleged separate property because there were no pleadings to support such alleged proof; (b) in finding any separate property in appellee because there is no proof rebutting the statutory presumption to the contrary; (c) in applying an inaccurate method of accounting to determine the properties to be awarded to the parties; (d) in awarding property to appellee as his separate property because there is no competent proof to such effect; (e) in awarding separate property because there is insufficient proof to such effect; (f) there is no evidence to justify the finding of the trial court that appellee inherited from the estate of Myrtle S. Cullum, his mother, a life estate in approximately 25,632.35 acres of land in Kerr County Texas; and (g) in entering judgment awarding appellee 66,130.87 acres as his separate property because appellee failed to prove his title or inheritance to such land. She also asserts that the trial court abused its discretion in dividing the community property, and that such division was unfair and inequitable.

Section 3.63 of the Texas Family Code provides that in a decree of divorce or annulment, the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard to the rights of each party and the children of the marriage.[5]

The general rule is that in a divorce case, a trial court is invested with wide discretion in disposing of any and all of the property of the parties, separate or community. Hedtke v. Hedtke, 112 Tex. 404, 248 S.W. 21 (1923); Grant v. Grant, 351 S.W.2d 897 (Tex.Civ.App.—Waco 1961, writ dism'd). In *Hedtke*, the Supreme

5. Article 4638, Tex.Rev.Civ.Stat.Ann., is the immediate predecessor in time to Section 3.63 of the Texas Family Code. The wording of Section 3.63 is substantially similar to that of Article 4638, with the exception that the last portion of Article 4638 has been omitted, to-wit: "Nothing herein shall be construed to compel either party to divest himself or herself of the title to real estate."

Court said: ". . . the court pronouncing a decree of divorce is invested with wide discretion in disposing of any and all property of the parties, separate or community, and that its action, in the exercise of such discretion, should be corrected on appeal only where an abuse of discretion is shown in that the disposition made of some property is manifestly unjust and unfair." 248 S.W. at 23.

We first consider appellant's contention pertaining to inadequacy of pleadings. Appellant cites Cox v. Cox, 439 S.W.2d 862 (Tex.Civ.App.—San Antonio 1969, no writ), with regard to the lack of the pleadings. In *Cox*, the husband who sued for divorce failed to plead his claim that an interest in a partnership was his separate property. This Court said: "However, appellant's [the wife's] pleading showed the existence of such property, and under Art. 4638, Vernon's Ann.Civ.St., the court was then required to partition same. In doing so, the court is given the discretion to partition the property in such manner as may be just and right under all the facts and circumstances in the record. Hailey v. Hailey, 160 Tex. 372, 331 S.W.2d 299 (1960); Nelson v. Nelson, 436 S.W.2d 200 (Tex.Civ.App.—Dallas 1969, no writ). This discretion authorized the court to hear evidence relating to said partnership interest." 439 S.W.2d at 865.

In Waggener v. Waggener, 460 S.W.2d 251, 253 (Tex.Civ.App.—Dallas 1970, no writ), the Court said: "In determining the nature and extent of necessary allegation concerning division of property in a divorce action we must remember that the law makes it mandatory for the trial judge to order a division of the estate of the parties when pronouncing a decree of divorce. * * * Our Supreme Court in Ex parte Scott, 133 Tex. 1, 123 S.W.2d 306 (1939), emphasized the mandatory duty of the trial court to decree a division of the property and in doing so the court can be controlled by the facts which lead him to believe it is just and right." See also Zaruba v. Zaruba, 498 S.W.2d 695 (Tex.Civ.App.—Corpus Christi 1973, no writ).

Appellee, in his original petition for divorce, pleaded that during the marriage of appellant and appellee, certain community property had been accumulated by the parties, and requested the court to divide the community property in an equitable manner. He also prayed for general relief. Appellant, in her original answer, stated that she was not in possession of any of the real or personal property of the parties, and that she was unaware of the nature and extent of said property. She asked the court to order appellee to file within 30 days a complete, sworn inventory showing the complete nature and extent of the community property of the parties and the separate property of appellee, together with a list of all claims, both in favor of, and against the estate of the parties or the separate estate of appellee, and also the location of each and every item of property belonging to the community estate of the parties or the separate estate of appellee. She also asks that a fair and equitable partition of the property be decreed. The court entered an order that such sworn inventory be filed, and in compliance therewith, three sworn inventories were filed. The inventories contain an extensive list of both the community property of the parties, and the separate property of appellee.

■ Looking at the pleadings of both appellee and appellant, it is our opinion, and we hold, that the pleadings herein were sufficient to support the introduction of evidence as to the character and nature of the property involved, both community and separate, and that under the pleadings, and the record, the court was required to partition the same. Section 3.63, supra; Hedtke v. Hedtke, supra; Zaruba v. Zaruba, supra;[6] Waggener v. Waggener, supra; Cox v. Cox, supra.

6. In Zaruba v. Zaruba, the husband complained that the trial court's judgment in a divorce case was fundamentally erroneous because it did not conform to the pleadings, and that there was no support in the pleadings for a judgment awarding his wife any

Appellant's remaining points of error complain of the judgment dividing community property; the award of separate property to appellee without adequate pleadings or proof; failure of appellee to properly trace; and the lack of proof and insufficient proof to support the trial court's judgment as to the property.

Appellant's basic contentions in this regard may be summarized as follows: (a) It is undisputed that the parties were in possession of approximately 66,130.87 acres of land at the time of the trial; that all property possessed by the husband and wife at the time the marriage was dissolved is presumed to be community property; that appellee failed to rebut such presumption by satisfactory evidence; and that appellant should have been awarded one half of such real property, to-wit, 33,065.44 acres. (b) That appellee failed to properly identify and trace the property claimed by him as separate property. (c) That the court erred in permitting the introduction of the last will and testament of Myrtle B. Schreiner into evidence because there were no pleadings to support such introduction; and, in any event, the evidence was of no probative value because no judgment probating the will was offered into evidence.[7] (d) That the trial court abused its discretion in dividing the community property, and that such division was unfair and inequitable.

Appellee, on the other hand, asserts that in a divorce suit, you do not have to prove title as in a trespass to try title suit; that when the pleadings of either party show the existence of separate and community property, it is necessary for the court to hear evidence to determine the character of the property in order to make an equitable division of the property; that the law makes it mandatory for the trial judge to order a division of the estate of the parties when pronouncing a decree of divorce; that the evidence in the record was clearly sufficient to support the court's partition and division of the property; and that the trial court did not abuse its discretion in dividing the community property, and in actuality, awarded appellant virtually all of the net community estate. He further asserts that the trial court did not award 66,130.87 acres to appellee as asserted by appellant,[8] but correctly determined that appellee's interest in 40,498.52 acres of land was inherited from his father and was his separate property; and that appellee inherited from his mother a life estate of 25,632.35 acres, which also was his separate property.

■ Section 5.02 of the Texas Family Code, formerly Article 4619, Tex.Rev.Civ. Stat.Ann., provides that property possessed by either spouse during or upon dissolution of the marriage is presumed to be community property. This is a rebuttable presumption with the burden upon one asserting otherwise to prove to the contrary by satisfactory evidence. Tarver v. Tarver, 394 S.W.2d 780 (Tex.1965); Cox v. Cox, supra.

The pertinent evidence in the record with regard to the division of property may be summarized as follows: (a) Plaintiff's Exhibit No. 2 is a listing of property of the YO Ranch Partnership, a partnership composed of Myrtle B. Schreiner and Charles Schreiner, III, which exhibit recites the interest owned by Myrtle B.

part of his separate property. The Court of Civil Appeals, in overruling such contention, stated that the wife's pleadings in this regard were adequate, in that she asked the court to make an equitable distribution of the community property acquired by the parties, and for general relief.

7. White v. White, 142 Tex. 499, 179 S.W.2d 503 (1944); Croom v. Little, 42 S.W.2d 490 (Tex.Civ.App.—Beaumont 1931, no writ).

8. The trial court judgment provides that appellee, Charles Schreiner, III, shall receive as and for part of his share of the community estate of the parties all community interest that may exist in the land involved, which property is recited to be the separate property of appellee.

Schreiner to be 43.13 per cent, and the interest of Charles Schreiner, III, to be 56.87 per cent. Appellant made no objection to the introduction of this exhibit. The trial court found that the interest of Charles Schreiner, III, in such partnership was the community property of appellee and appellant, except for the real estate. (b) Plaintiff's Exhibit No. 3 is a copy of the decree of the court in Cause No. 3961, styled "IN THE MATTER OF THE ESTATE OF WALTER R. SCHREINER, DECEASED," in the district court of Kerr County, Texas. In such suit, the court partitions and divides approximately 64,363 acres of land between Myrtle B. Schreiner, the wife of Walter R. Schreiner, and the trustees of Charles Schreiner, III, under the last will and testament of Walter R. Schreiner, with Myrtle B. Schreiner receiving approximately 27,980.35 acres of land, and the trustees for Charles Schreiner, III, the son of Walter R. Schreiner, receiving approximately 36,313.7 acres of land. The court decree recites that in a will dated February 10, 1931, admitted to probate in the County Court of Kerr County, Texas, and recorded in Book 12, page 91 et seq. of the Probate Minutes of Kerr County, Texas, Walter R. Schreiner willed and devised one half of his property and estate to Myrtle B. Schreiner, and one half to Myrtle B. Schreiner, W. Scott Schreiner, and A. C. Schreiner, Jr., as trustees for the benefit of Charles Schreiner, III. (c) Plaintiff's Exhibit No. 4 is a trustee's deed from Myrtle B. Schreiner, W. Scott Schreiner and A. C. Schreiner, Jr., as trustees under the last will and testament of Walter R. Schreiner, conveying to Charles Schreiner, III, approximately 40,498 acres of land. This deed recites that it is in compliance with the last will and testament of Walter R. Schreiner, deceased, which was admitted to probate on May 1, 1933, in a probate proceeding in the County Court of Kerr County, Texas, styled "IN THE MATTER OF THE ESTATE OF WALTER R. SCHREINER, DECEASED," Cause No. 790 of the probate docket of said court, and recorded in the Probate Records of Kerr County, Texas, in Volume 12, pages 90, 91, 103, 104 and 105. (d) Plaintiff's Exhibit No. 10 is a copy of the last will and testament of Myrtle S. Cullum, formerly Myrtle B. Schreiner. This instrument contains a certificate from the county clerk of Kerr County, Texas, that such instrument is a true and correct copy of the last will and testament of Myrtle S. Cullum of record in Volume 69, page 768, as the same is taken from the original instrument filed in the probate papers of Kerr County, "IN THE MATTER OF THE ESTATE OF MYRTLE B. SCHREINER, DECEASED," and also appears of record in the Probate Minutes of Kerr County, Texas. Such will devises and bequeaths to trustees therein named all of her interest in the YO Ranch Partnership in trust for the benefit of her grandchildren, and devised all the rest, residue and remainder of her estate to the trustees therein named with provisions that the trustees shall pay the net income therefrom to her son, Charles Schreiner, III, so long as he shall live, and after his death, that the property shall vest in and become a part of the trusts created for her grandchildren.[9] (e) Sworn inventory of com-

---

9. Appellant asserts that the trial court erred in admitting this exhibit into evidence, and asserts that, in any event, it has no probative force because the order admitting such will into probate was not introduced into evidence. The only objection made to this exhibit in the trial court was that there were no pleadings to support the character of the property as being separate property. We have heretofore held the pleadings to be sufficient.

Appellee contends that the clerk's certificate that the will appears of record in the Probate

Minutes of Kerr County, Texas, necessarily imputes under the Probate Code, V.A.T.S., that the will has been admitted to probate. See Section 15, Texas Probate Code. But also see Croom v. Little, supra. It does not seem to have been questioned in the trial court that appellee had a life estate in the real property of the estate of his mother, Myrtle B. Schreiner, and appellant's attorney, during direct examination of appellant's own witness, made this statement: "Take into account that Mr. Schreiner has a life estate in the real estate of the 23,000 acres that is in

munity and separate property dated October 29, 1970; written interrogatories and answers thereto with attached sworn inventory of Charles Schreiner, III; corrected and amended sworn inventory of Charles Schreiner, III, as of June 30, 1972; and supplement to inventory of June 30, 1972, filed September 20, 1972. These inventories listed in considerable detail the nature and extent of the community property of the parties and the separate property of appellee, including real property, stocks, bank accounts, livestock, wild animals, and various and numerous other items of personal property. The sworn inventory was filed upon appellant's demands that appellee file a full and complete sworn inventory showing the complete nature and extent of the community property of the parties, and the separate property of appellee. (f) Sworn testimony of appellee, without objection, that the inventories truly reflect all of the property owned jointly by appellee and Mrs. Schreiner and by appellee individually. (g) Plaintiff's Exhibit No. 8 made by Russel Kyse, a certified public accountant, which is a listing of the lands involved in the YO Ranch, showing a breakdown of the lands owned by Myrtle B. Schreiner, Charles Schreiner, III, the Charles Schreiner, III, Trust No. 1 for his children, and the Charles Schreiner, III, Trust No. 2 for his children, which exhibit lists and sets forth the source from which such property had been received.[10]

Appellant, in her brief, among other things, asks that the judgment be corrected so as to award appellant an additional 33,065.44 acres of land. It is to be noted that without the evidence introduced by ap-

pellee as hereinbefore set forth as to the character of the 40,498 acres of land and as to the life estate interest in the 25,632 acres of his mother, Myrtle B. Schreiner, there would be no evidence nor proof before the court to show that there was any real property in which the community could claim an interest.

The court found in its judgment that the value of the assets comprising the community estate of the parties is the sum of $1,517,607.66; and that there are notes and other outstanding obligations due by the community estate of $924,456.45, leaving the net value of the community estate of the parties as $593,151.21. The court decrees that appellant shall have and receive as her part of the community estate the sum of $525,000; and that appellee pay all outstanding notes, debts and other obligations of the community estate of the parties. It is seen that virtually all of the net assets of the community estate were awarded to appellant. It does not appear from the record that any contention was made in the trial court that the real estate here involved was community property, and the case appears to have been tried on the basis that such property was the separate property of appellee.

We hold that the trial court's division and award of property is sufficiently supported by the pleadings and the evidence; that the trial court's material findings of fact as to the property are amply supported by the record; that the trial court's division of property was not unfair nor unjust; and that the trial court did not abuse its discretion in dividing the community prop-

---

the estate of his mother that goes into the YO Partnership."

The inventory of property filed by appellee lists as separate property appellee's interest in the estate of Myrtle B. Schreiner, and states that such interest in such estate is a life estate. On direct examination, Mr. Schreiner testifed that the inventory he had filed truly reflects all the property owner jointly by himself and Mrs. Schreiner, and by him individually.

10. This exhibit lists the real property used in the YO Ranch Partnership. The property of Charles Schreiner, III, is listed as the YO Ranch, the Live Oak Ranch, and the Rincon Seco Ranch, aggregating 40,498.70 acres, being the property received in the partition of the estate of Walter R. Schreiner. The property of Myrtle B. Schreiner is listed as 27,980.35 acres received in the partition of the estate of Walter R. Schreiner. Said exhibit also lists the property belonging to the Charles Schreiner, III, Trusts Nos. 1 and 2 for his children.

**850**

erty. Appellant's points of error Nos. 1, 2, 3, 4, 5, 6, 7 and 8 are overruled.

All of appellant's points of error have been considered, and all are overruled. The judgment of the trial court is affirmed.