**SAN PATRICIO COUNTY,**
Texas, Appellant,

v.

**NUECES COUNTY HOSPITAL DISTRICT, d/b/a Memorial Medical Center, Appellee.**

No. 13–86–146–CV.

Court of Appeals of Texas,
Corpus Christi.

Aug. 29, 1986.

Rehearing Denied Oct. 30, 1986.

James M. Whitten, Sinton, for appellant.

Wm. DeWitt Alsup, Corpus Christi, for appellee.

Before NYE, C.J., and KENNEDY and SEERDEN, JJ.

## OPINION

KENNEDY, Justice.

Trial was to the court without a jury, and the court awarded the Nueces County Hospital District, doing business as Memorial Medical Center (Memorial), $154,388.42, plus interest and attorneys' fees. Memorial sued to collect for medical and hospital services rendered to Salvador Garcia in 1982.[1] San Patricio County raises three points challenging the evidence. We affirm the judgment of the trial court.

On January 15, 1982, Garcia was seriously injured when he lost control of his motorcycle. He sustained massive injuries to the chest and abdomen, and his right leg was amputated. The emergency life-saving treatment he received included 236 days in Memorial's intensive care unit, and his hospitalization lasted into September of 1982. Before this suit was brought, appellant had only paid a percentage on six days' hospitalization.

Each of appellant's points of error allege that there is no evidence, or, alternatively,

insufficient evidence to support a finding of the trial court. In considering a "no evidence" or "insufficient evidence" point, we follow the test in *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400, 401 (Tex.1981), *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965), and *Allied Finance Co. v. Garza*, 626 S.W.2d 120, 125 (Tex. App.—Corpus Christi 1981, writ ref'd n.r. e.). When specific findings of fact and conclusions of law are filed, and no additional findings are requested, and a statement of facts is also brought forth, findings will be sustained if any evidence supports them. *McWhorter v. City of Winnsboro*, 525 S.W.2d 701, 705 (Tex.Civ.App.—Tyler 1975, writ ref'd n.r.e.). We will uphold the trial court's findings unless they are manifestly erroneous and without any evidence to support them or are so against the great weight and preponderance as to be manifestly wrong. *Hinojosa v. Castellow Chevrolet Oldsmobile, Inc.*, 678 S.W.2d 707, 713 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.).

By point one, appellant claims error in the trial court's finding that Garcia was a resident of San Patricio County prior to and at the time of the injuries for which Memorial treated him. Appellant alleges that Garcia was a resident of Garland, Dallas County, Texas, and supports his contention by quoting an authority on domicile (rather than residence), by alleging that his driver's license showed him to be a Garland resident, and by presenting testimony of Garcia that the last place in which Garcia had a permanent home was in Garland. Garcia testified that his driver's license had been taken away for DWI in Dallas County. Memorial's attorney asked if Garcia had lived with his mother in Sinton after living in Garland, and Garcia replied, "Yes." The attorney also asked, "And was it your belief that since you were living

---

1. TEX.REV.CIV.STAT.ANN. art. 4494n, § 5 (Vernon 1976), provides in part:
   If care or treatment is given to a resident of a county outside the Hospital District which has not contracted with the Board of Managers for such services, and said nonresident is wholly without financial means except such as are de-

   rived from charity, that County shall, upon presentation of a certified statement that care or treatment was necessary for the preservation of human life and was actually performed, be obligated to reimburse the Hospital District in an amount not to exceed the actual cost of the service rendered.

with your mother, it was not actually your home, but it was someone else's home that you were living in?" Garcia replied, "Yes."

Other testimony included Garcia's statements that he and his family lived at an address in Sinton, in San Patricio County, at the time of the wreck, that he and his family lived with his mother and his sister, and that he had lived with his mother at that address since 1977. Garcia also stated that he had applied to move to the Housing Authority Apartments in Sinton, and that he intended to make a permanent home in Sinton.

■■■ The statute under which Memorial sued requires only that the recipient of the medical services be a *resident* of the county to be charged, not a domiciliary. *See* TEX.REV.CIV.STAT.ANN. art. 4494n, § 5 (Vernon 1976). "Residence" requires that a person be living and physically present in a particular locality, but "domicile" requires that a person live in that locality with the intention of making it a fixed permanent home. *Skubal v. Skubal,* 584 S.W.2d 45, 46 (Tex.Civ.App.—San Antonio 1979, writ dism'd w.o.j.); *Schreiner v. Schreiner,* 502 S.W.2d 840, 843 n. 4 (Tex. Civ.App.—San Antonio 1973, writ dism'd). We find the evidence sufficient to support the court's finding that Garcia was a San Patricio County resident, and overrule point one.

Appellant's second point of error alleges that there was no evidence or insufficient evidence to support the finding that Garcia had no financial means at the time of the accident or afterward. Appellant claims that the record is silent on this point, and that "Garcia could have $2,000,000 in the bank" under the evidence.

Garcia's wife testified that Garcia was unemployed at the time of the wreck, but she had been employed at a motel for seven months in 1981. She had a child six days after the wreck. Garcia testified that welfare paid for the birth, and that he is no longer married. Nina Trevino, head of the San Patricio County Welfare Department, testified that she had seen Garcia at the hospital. She testified that his wife and children lived in the hospital lobby when Garcia was first hurt, and that they had no home of their own, but lived with his mother. She testified that County Welfare had assisted the family with medicine and groceries.

Both Trevino and Garcia testified that he is now confined to a wheelchair. Garcia testified that he had lost his right leg and had injuries to the chest and abdomen as a result of the wreck. He testified that he later became blind, and at the time of his deposition, saw only shadows. Garcia testified that in Garland, he had worked as a greenskeeper for a golf course, as a janitor for Gibson's, at a company that made airplane parts, at South Texas Trailers, and for Weaver Construction Company, doing paving work. He testified that he had quit school in the seventh grade, did not know of any kind of work he was able to do, and received social security.

Moreover, Trevino testified that she approved payment to Memorial of about $12,-000.00 for Garcia's medical care. This would not have been paid unless the county considered him indigent and without financial means.

■■■ The evidence is sufficient to support the finding that Garcia is without financial means except for charity. We overrule point two.

By its third point of error, appellant challenges the sufficiency of the evidence to support the trial court's finding that the actual cost of the medical services rendered to Garcia was $154,388.42.

Wheeler B. Lipes, President of Memorial Medical Center and Administrator of the Nueces County Hospital District, testified that he had examined the medical and business records from the Garcia case. Lipes testified that costs, as distinguished from charges, are actual financial outlays in labor, materials, and services. He testified that Memorial used the cost reporting system of Medicare and Medicaid, in which a percentage of charges is used to determine costs. He testified, "It's impossible to

compute exactly the absolute cost right down to the cent, and therefore, you use these percentages which are accepted by the federal government, and the state government, and by the district." He explained that the nursing staff was paid at different rates and that these things could not be "pinpointed every time somebody did something."

On cross-examination, Lipes testified that "it would be impossible to take every syringe, every needle, every tongue depressor, every suture, and bill for that separately, because the cost for maintaining those records would far exceed the value. This was recognized by the federal government when it put Medicare into position." Using an example of a shot for which the charge was $10.00, he explained that the district would be billed $7.10. Appellant's attorney proposed that the particular drug may have cost only $4.00. Lipes replied that even if the vendor was paid $4.00, costs to the hospital would be greater because of the costs of pharmacy, direction, purchasing, delivery, and administration of the drug. He testified that the applicable rate was 71%, and that in his estimation, that calculation was the actual cost, as close as it was humanly possible to determine. Lipes testified that the $154,000.00 figure included $147,147.09 for hospital costs and some $7,200.00 in physician reimbursement.

All of the above testimony was admitted without objection. Although appellant did make objections thereafter, all of the relevant testimony came in without objection at some point in Lipes' testimony. We presume that the trial court disregarded incompetent evidence and improper elements in arriving at his decision. *City of Arlington v. Texas Electric Service Co.*, 540 S.W.2d 580, 584 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n.r.e.).

Lipes testified that a prior payment of San Patricio County and a contribution from Medicaid had been credited in calculating the figure. Both Lipes and Dr. Rudolfo Garza, Jr., the treating physician, testified that the costs that were finally ar-

rived at were fair, reasonable, and necessary under the circumstances. In fact, Garza's uncontroverted testimony characterized the charges as a "giveaway" and "conservative."

The evidence is sufficient to support the finding that the due and unpaid portion of the actual cost of the medical services rendered to Garcia was $154,388.42. We overrule appellant's third point.

We AFFIRM the trial court's judgment.