OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

July 10, 2001

The Honorable Michael A. Stafford
Harris County Attorney
1019 Congress Avenue, 15th Floor
Houston, Texas 77002-1700

Opinion No. JC-0394

Re: Whether Harris County Hospital District may provide discounted health care to persons residing in Harris County, without regard to their immigration or legal status (RQ-0341-JC)

Dear Mr. Stafford:

The Harris County Hospital District would like to provide free or discounted nonemergency health care to persons residing within its boundaries, without regard to their immigration or legal status. Your predecessor asked whether the district may do so consistently with state and federal law, in particular, the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, 8 U.S.C. §§ 1601-1646 (1994 & Supp. V 1999) ("PRWORA").[1] PRWORA prohibits the district from providing free or discounted nonemergency health care to undocumented aliens, even if they reside within the district's boundaries. If the district implements a policy that violates PRWORA, it is asked what the penalty would be for the violation. PRWORA does not state a penalty for providing public benefits to undocumented aliens in violation of its requirements, although there may be sanctions to the district pursuant to conditions attached to federal funding. There may also be legal consequences pursuant to state law for spending public funds for an unauthorized purpose.

The Harris County Hospital District, created under chapter 281 of the Health and Safety Code, is required to provide "medical aid and hospital care to indigent and needy persons residing in the district." TEX. HEALTH & SAFETY CODE ANN. § 281.002 (Vernon 2001); see also TEX. CONST. art. IX, §§ 4, 9 (hospital districts "shall assume full responsibility for providing medical and hospital care to needy inhabitants of the county"). The Indigent Health Care and Treatment Act, chapter 61 of the Health and Safety Code, defines the responsibilities of hospital districts in providing medical care to indigent residents. See TEX. HEALTH & SAFETY CODE ANN. § 61.052 (Vernon 2001). If a patient from the county in which the hospital is located or relatives responsible for his or her support are unable to pay for the patient's care, the district must treat the patient without charge. See id. § 281.071(a) (patient or relatives must pay for care in proportion to their financial ability to pay); see also id. § 61.052 (public hospital or hospital district shall provide health care assistance to eligible residents in service area). If a county, municipality, or public hospital

---

[1]See Letter and Brief from Michael P. Fleming, Harris County Attorney, to Honorable John Cornyn, Texas Attorney General (Jan. 25, 2001) (on file with Opinion Committee) [hereinafter Request Letter].

located outside the boundaries of the hospital district is liable for a patient's care, the hospital district board must seek reimbursement from that entity as provided by the Indigent Health Care and Treatment Act. *See id.* § 281.072; *see generally, San Patricio County v. Nueces County Hosp. Dist.*, 721 S.W.2d 375, 377 (Tex. Civ. App.–Corpus Christi 1968, writ ref'd n.r.e.) (meaning of "residence" in hospital district statute).

An individual's status as an alien does not preclude him or her from being a state or county resident under state statutes establishing public benefit programs. *See* Tex. Att'y Gen. Op. Nos. JM-962 (1988) at 3, 8 (Commission for the Blind may not deny vocational rehabilitation services to adults on ground that they are undocumented aliens); WW-1274 (1962) at 3 (fact that child is an alien does not prevent him from being "resident of the State" within statute providing eye surgery at public cost). In considering an individual's eligibility for nonemergency health care, however, the hospital district may not ignore applicable federal law. The federal government has broad constitutional powers over the admission, naturalization and residence of aliens, while the states have no such power and cannot add to or remove conditions lawfully imposed by Congress on the admission, naturalization and residence of aliens in the United States. *See generally, Toll v. Moreno*, 458 U.S. 1, 12 (1982). State laws that are inconsistent with federal immigration policy are preempted by federal law. *See DeCanas v. Bica*, 424 U.S. 351, 354-55 (1976); *Graham v. Richardson*, 403 U.S. 365, 368 (1971) (overturning state restrictions on the provision of welfare benefits as incompatible with the federal immigration power). Accordingly, the hospital district's provision of services to aliens may not be inconsistent with federal immigration law and policy.

PRWORA provides that undocumented or illegal aliens are ineligible for state and local public assistance, subject to specific exceptions. *See* 8 U.S.C. § 1621 (1994 & Supp. V 1999). This provision preempts contrary state laws and renders illegal the state and local programs that provide public benefits to illegal aliens contrary to its terms. *See Doe v. Wilson*, 67 Cal. Rptr.2d 187, 189 (Cal. App. 1997, review denied); *see generally DeCanas*, 424 U.S. at 354-55 (discussing preemption of state laws regulating immigration). An undocumented alien is ineligible for health services provided at public expense by the hospital district, except for those health services specifically authorized by PRWORA. In deciding whether an indigent resident is eligible for nonemergency services at public cost, the hospital district must also consider whether the resident is an alien, and if so, that person's immigration status. Questions about the eligibility of an alien residing within the hospital district's boundaries must be resolved by reference to 8 U.S.C. § 1621.

PRWORA provides that an alien is ineligible for any state or local public benefit if the alien is not:

> (1) a qualified alien (as defined in section 1641 of this title),

> (2) a nonimmigrant under the Immigration and Nationality Act [8 U.S.C.A. § 1101 et seq.], or

(3) an alien who is paroled into the United States under section 212(d)(5) of such Act [8 U.S.C.A. § 1182(d)(5)] for less than one year[.]

8 U.S.C. § 1621(a) (1994 & Supp. V 1999). Undocumented aliens are ineligible for state or local health benefits "for which payments or assistance are provided to an individual, household, or family eligibility unit by an agency of a State or local government or by appropriated funds of a State or local government." *Id.* § 1621(c)(1)(B). This eligibility restriction does not apply to:

(1) Assistance for health care items and services that are necessary for the treatment of an emergency medical condition (as defined in section 1396b(v)(3) of Title 42) of the alien involved . . . .[2]

. . . .

(3) Public health assistance for immunizations with respect to immunizable diseases and for testing and treatment of symptoms of communicable diseases whether or not such symptoms are caused by a communicable disease.

. . . .

*Id.* § 1621(b).

Section 1621(d) authorizes states to provide additional public benefits to undocumented aliens as follows:

A State may provide that an alien who is not lawfully present in the United States is eligible for any State or local public benefit

---

[2]An "emergency medical condition" is defined as:

a medical condition (including emergency labor and delivery) manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in--

(A) placing the patient's health in serious jeopardy,

(B) serious impairment to bodily functions, or

(C) serious dysfunction of any bodily organ or part.

42 U.S.C. § 1396b(v)(3) (1994).

for which such alien would otherwise be ineligible under subsection (a) of this section only through the enactment of a State law after August 22, 1996 which affirmatively provides for such eligibility.

*Id.* § 1621(d).

The authority of the Harris County Hospital District to provide nonemergency health care at public expense to undocumented aliens is limited by 8 U.S.C. § 1621. The hospital district may not provide such care to undocumented aliens unless the Texas Legislature has adopted a law after August 22, 1996, "which affirmatively provides for [their] eligibility." *Id.* We find no statute applicable to the hospital district that complies with section 1621(d).

The word "affirmatively" has been defined to mean "[b]y way of assertion or express declaration." I OXFORD ENGLISH DICTIONARY 219 (2d ed. 1989). An enactment that "affirmatively provides for such eligibility" would expressly state the legislature's intent that undocumented aliens are to be eligible for certain public benefits. The legislature adopted two such provisions in 1997. *See* Act of May 19, 1997, 75th Leg., R.S., ch. 575, § 23, 1997 Tex. Gen. Laws 2012, 2020. The Act amended Family Code section 264.004 to state that the Department of Protective and Regulatory Services may use state and federal funds to provide child protective services and related benefits to eligible children and families "without regard to the immigration status of the child or the child's family." TEX. FAM. CODE ANN. § 264.004(c) (Vernon Supp. 2001); *see* Act of May 19, 1997, *supra*, § 23, at 2020. At the same time, the legislature amended section 264.006 of the Family Code to provide that the commissioners court of a county may provide for services to and support of children in need of protection and care "without regard to the immigration status of the child or the child's family." TEX. FAM. CODE ANN. § 264.006 (Vernon Supp. 2001); *see* Act of May 19, 1997, *supra*, § 25, at 2020. The language of these Family Code provisions adopted after August 22, 1996, makes clear the legislature's intent to provide for the eligibility of undocumented aliens for publicly-funded child protective services.

The requestor has not cited any statute applicable to the Harris County Hospital District expressly stating that aliens unlawfully in the county may receive publicly-funded health care from the district, nor have we identified such a statute. It is suggested that House Bill 1398 of the Seventy-sixth Texas Legislature, which amended provisions of the Indigent Health Care and Treatment Act, provides that undocumented aliens may receive public benefits from the Harris County Hospital District.[3] This bill left unchanged the definition of residency and amended and reenacted provisions on residence and eligibility for health care.[4] *See* Act of May 27, 1999, 76th Leg., R.S., ch. 1377, §§ 1.02-.04, 1.08, 1999 Tex. Gen. Laws 4654, 4655-56, 4657-58 (amending

---

[3]*See* Brief from Joseph P. Berra, Staff Attorney, Mexican American Legal Defense and Educational Fund (MALDEF), to Honorable John Cornyn, Texas Attorney General, at 5 (Apr. 2, 2001) (on file with Opinion Committee).

[4]*See id.*

sections 61.004, 61.0045, 61.006, and 61.028 of the Health and Safety Code). However, House Bill 1398 does not expressly refer to the immigration status of aliens nor does it include any indication that the legislature intended it to provide that an alien "not lawfully present in the United States" would be eligible for a state or local public benefit for which the alien was ineligible under PRWORA. House Bill 1398 does not "affirmatively provide[]" that undocumented aliens will be eligible for any public benefit under chapter 61 of the Health and Safety Code. The Harris County Hospital District has no authority to provide publicly-funded health care services to undocumented aliens aside from the services expressly authorized by section 1621.

An argument is also made that 8 U.S.C. § 1621(d) violates the Tenth Amendment of the United States Constitution.[5] The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. CONST. amend. X. Pursuant to this amendment, "Congress may not assume control over the legislative processes of the states by directly compelling them to enact and enforce a federal regulatory program." *New York v. United States*, 505 U.S. 144, 157 (1992); *State v. United States*, 106 F.3d 661, 665-66 (5th Cir. 1997); *see also City of New York v. United States*, 179 F.3d 29, 33 (2d Cir. 1999), *cert. denied* 528 U.S. 1115 (2000). Moreover, "Congress cannot circumvent that prohibition by conscripting the State's officers directly." *Printz v. United States*, 521 U.S. 898 (1997); *City of New York v. United States*, 179 F.3d at 33.

Section 1621(d) authorizes a state to provide that an undocumented alien is eligible for a state or local public benefit for which the alien is ineligible under PRWORA "only through the enactment of a State law after August 22, 1996 which affirmatively provides for such eligibility." 8 U.S.C. § 1621(d) (1994 & Supp. V 1999). It has been argued that section 1621(d) violates the Tenth Amendment because it invades a central aspect of state sovereignty: "the states' ability to determine and establish their own legislative decision makers and decision making process."[6] That is, section 1621(d) requires a state to express its intent to provide public benefits for undocumented aliens "only through the enactment of a State law," rather than through any method the state might choose. *See Doe v. Wilson*, No. C-97-2427 (N.D. Cal. Dec. 16, 1997) (order granting defendants' motion to dismiss), 1997 WL 811788 (if court found "reenactment clause" unconstitutional, it could grant relief only by severing provision in its entirety).[7]

We accord federal statutes a strong presumption of constitutionality. *See United States v. Morrison*, 529 U.S. 598, 607 (2000). Section 1621 does not compel a state government to enact or administer any federal regulatory program. Instead, it prohibits state and local entities from allowing undocumented aliens to participate in all but a few public benefit programs. Section 1621(d) does

---

[5]*See id.* at 8-9.

[6]*Id.* at 9.

[7]This case was settled when the challenged regulations were withdrawn and California eventually enacted legislation reauthorizing programs that had extended eligibility to undocumented aliens. *See id.* at 8.

not require any action by a state, but if a state wishes to provide more public benefits to undocumented aliens, this provision authorizes it to do so by adopting legislation. The Tenth Amendment does not bar Congress from encouraging a state to regulate in a particular way or holding out incentives to the states as a method of influencing a state's policy choices. *See New York v. United States*, 505 U.S. at 166. The cases of the United States Supreme Court "have identified a variety of methods, short of outright coercion, by which Congress may urge a State to adopt a legislative program consistent with federal interests." *Id.* Section 1621(d) enables each state to make decisions about public benefits for undocumented aliens based on its own circumstances. This provision does not coerce any state to adopt a legislative program, but instead it offers each state the option of departing from the federal restrictions on public benefits for aliens, which the state may accept by enacting a statute that complies with section 1621(d). Thus, section 1621(d) may encourage states to legislate in a particular area, but it does not require them to do so. In our opinion, section 1621(d) does not violate the Tenth Amendment of the United States Constitution.

If the hospital district board chooses to provide routine health care to undocumented aliens despite PRWORA, your predecessor asked what the penalty is for violating this Act. As the Harris County brief points out, there are no specific enforcement procedures for violating 8 U.S.C. § 1621.[8] Nonetheless, there could be consequences under state or federal law to the hospital district and its officers for spending public funds for a purpose specifically barred by 8 U.S.C. § 1621. *See generally* TEX. HEALTH & SAFETY CODE ANN. §§ 281.021(c) (Vernon 2001) (hospital district is governed by board of hospital managers appointed by Harris County Commissioners Court); 281.026 (administrator appointed by the board directs affairs of the district).

If the hospital district chooses to spend public funds to provide services that it lacks authority to provide and that it is forbidden to provide by PRWORA, it may be accountable for that decision under various state and federal laws. We will point out legal consequences that may apply to the Harris County Hospital District, its board members and administrator. Whether the district, its board members and administrator are subject to legal consequences for a particular unauthorized expenditure of public funds depends upon all the relevant facts and circumstances and cannot be determined in an attorney general opinion. *See, e.g.*, Tex. Att'y Gen. Op. Nos. JC-0328 (2000) at 6; JC-0285 at 5, n.2; JC-0020 at 2; DM-98 (1992) at 3; H-56 (1973) at 3; M-187 (1968) at 3; O-2911 (1940) at 2.

As the Harris County brief points out, the hospital district receives funds from Medicare and Medicaid and as a condition for receiving these funds, it must comply with applicable federal laws related to the health and safety of patients. *See* 42 C.F.R. § 482.11 (2000).[9] The brief also states that "it is not unusual for state funded grants allocated to the District to include requirements that the

---

[8]*See* Request Letter, *supra* note 1, at 5.

[9]*See id.*

District comply with all applicable state and federal laws."[10] If section 1621 is an "applicable federal law" under such grants, the brief indicates that the hospital district's noncompliance with that statute could jeopardize the receipt of state or federal funding.[11]

The hospital district may also be subject to consequences under state law for making an unauthorized expenditure of public funds. The district is subject to accounting and control procedures prescribed by the commissioners court or by the hospital district board under authority delegated by the commissioners court. See TEX. HEALTH & SAFETY CODE ANN. § 281.049 (Vernon 2001); see also id. § 281.092 (hospital district administrator must prepare an annual report for board, commissioners court, Texas Board of Health and Comptroller showing the district's operations for the fiscal year). Questions about the expenditure could arise in an audit of the district's financial records. The district's budget, prepared by the administrator and approved by the board, is subject to final approval by the commissioners court. Id. § 281.091. The commissioners court could take into account the board's unauthorized expenditures when it considers approving the budget. See Tex. Att'y Gen. Op. No. JM-79 (1983) at 3 (authority of commissioners court to reject hospital district's budget). The board could also be subject to a taxpayer's suit to enjoin future unauthorized expenditures. See, e.g., Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 555-56 (Tex. 2000); Osborne v. Keith, 177 S.W.2d 198, 200 (Tex. 1944).

Finally, the request letter notes that public policy arguments have been made that undocumented aliens residing within the district's boundaries should be eligible for nonemergency health care from the district.[12] For example, it is suggested that providing such health care would reduce the costs of emergency health care.[13] Arguments in favor of amending section 1621 of title 8 should be addressed to Congress, while arguments for legislative action under section 1621(d) should be addressed to the Texas Legislature.

---

[10]Id.

[11]Id.

[12]See id.

[13]See id.

## S U M M A R Y

The Personal Responsibility and Work Opportunity Reconciliation Act of 1996 provides in 8 U.S.C. § 1621 that undocumented aliens are ineligible for state and local public benefits, with certain exceptions. Under this Act, a state may provide that an alien not lawfully present in the United States is eligible for any state or local benefit only through the enactment of a state law after August 22, 1996, which affirmatively provides for such eligibility. No Texas statute adopted before or after August 22, 1996, affirmatively provides that residents of hospital districts are eligible for public benefits without regard to immigration status. The Act therefore prohibits the Harris County Hospital District from providing free or discounted nonemergency health care to undocumented aliens, even if they reside within the district's boundaries.

Yours very truly,

JOHN CORNYN
Attorney General of Texas


HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN D. GUSKY
Chair, Opinion Committee

Susan L. Garrison
Assistant Attorney General, Opinion Committee