Dorothy COCKERHAM and Theodore Mack,
Trustee in Bankruptcy, Appellants,

v.

E. A. COCKERHAM, Appellee.

No. 5337.

Court of Civil Appeals of Texas,
Waco.

Sept. 19, 1974.

Rehearings Denied Oct. 10, 1974.

Garrett, Settle & Callaway, John Whiteside, Fort Worth, for appellants.

Lynn B. Griffith, Waxahachie, for appellee.

OPINION

JAMES, Justice.

This is a divorce case, with the intervention of the wife's trustee in bankruptcy. Plaintiff-Appellant Dorothy Cockerham brought this suit for divorce against Defendant-Appellee E. A. Cockerham; whereupon Intervenor-Appellant Theodore Mack, Trustee in Bankruptcy of Appellant Dorothy Cockerham, intervened seeking to require the payment of indebtedness to the creditors of the bankrupt estate out of the community property prior to its division between the husband and wife. We affirm the trial court's judgment. Trial wherein the husband, wife, and Trustee all participated, was had to a jury, which found: (1) and (2) That the best interests of the two minor children of the marriage dictated that they should be awarded to their father, Defendant Appellee E. A. Cockerham. The children were Kim, a girl 8 years old and Kevin, a boy six years old.

(3) Special Issue No. 3 inquired:

"Do you find from a preponderance of the evidence that Dorothy Cockerham has made gifts of property to De Ray Houston?

Answer 'yes' or 'no.'" To this the jury answered, "no".

Pursuant to the jury verdict, the trial court on September 11, 1972, entered a judgment granting a divorce, awarding custody of the children to the husband, giving the wife child visitations two hours every other Sunday at the husband's home, and restraining the wife from taking the children away from the husband's home. The judgment then recites: "The Court further finds that due to the intervention of the Trustee in Bankruptcy, the property rights of the parties herein are not determined at this time, but this Court retains jurisdiction of the property rights of said parties until finally determined at a future date."

Then about a year later, in September 1973, the cause was again called for trial, whereupon the former wife, the former husband, and the Trustee-Intervenor again participated. This last hearing was before the court without a jury, and was for the purpose of adjudication of the property rights of the parties. Pursuant to this last hearing, the trial court on December 17, 1973 entered its judgment making the following dispositions of property, to wit:

(1) That the 198 acre tract described therein was the homestead of the parties,. and was awarded to Defendant-Appellee E. A. Cockerham, along with the household and kitchen furnishings.

(2) That the 320 acre tract described therein was adjudicated to be one-half the separate property of E. A. Cockerham and the other half the community property of Dorothy Cockerham and E. A. Cockerham.

(3) The court found that "there is existing the sum of $47,985.00 in community debts including the· sum of $36,200.00 due on indebtedness secured by a lien on the homestead awarded to E. A. Cockerham, and that the said Dorothy Cockerham has taken the sum of $19,317.14 worth of community property in fraud of the rights of the said E. A. Cockerham."

(4) The court found that aside from the land above-mentioned, the community property consisted of "certain cattle, farm equipment and machinery, a milk base, milking equipment, a pickup vehicle and a Buick automobile." The court awarded the pickup to him (E. A. Cockerham), the Buick to her (Dorothy Cockerham), and divided the rest of the community property equally between him and her.

(5) The court charged her share of the community property to be charged with one-half the sum of $19,317.14 or $9658.57, but this being subject to the priority of the community debts of $47,985.00.

(6) The court further found that the community one-half of the 320 acres, along with the cattle, farm equipment, and machinery, milk base, and milking equipment is "subject to the community debts and the parties take same subject thereto."

(7) The trial court further found that "all of the rights of the said Dorothy Cockerham as to any and all of the property herein set out are subject to the rights of the Intervenor Trustee in Bankruptcy · and any award of any property or rights herein set out for her shall be subject to the rights of said Intervenor Trustee in Bankruptcy."

(8) Costs were taxed against Dorothy Cockerham.

It is from this judgment adjudicating the property rights that Dorothy Cockerham and the Trustee-Intervenor prosecute this appeal.

The court made Findings of Fact and Conclusions of Law, the pertinent portions of which (without repeating those set out in the judgment) are substantially as follows:

(1) That the 198 acre homestead tract had an existing debt of $36,200.00 against it, and in addition thereto the parties owed $11,785.00 of other community debts, or a total community indebtedness of $47,985.00.

(2) The trial court made the following finding which is contrary to the jury's answer to Special Issue No. 3 as hereinabove set out. For this reason we set out such finding in full, to wit:

"The Court further finds that Dorothy Cockerham has, over a period of time, taken from the community assets sums of money totalling at least $19,317.14, and used said money over the protest of the said E. A. Cockerham in the purchase and operation of a dress shop, and that the dress shop inventory went into a store owned by a third party male. Further, the Court finds that the said Dorothy Cockerham and the same said third party male had and maintained a joint banking account. In addition to the above, the Court finds that after the closing of the dress

shop operated by the said Dorothy Cockerham, that she became the manager and sole employee of the dress shop supposedly owned by the third party male. It was to this dress shop that the inventory from the store operated by Dorothy Cockerham was taken, and for which she purchased one time at least $2,000.00 worth of inventory and placed same to her store account, but that the inventory was placed in the store supposedly owned by the third party male. Upon this purchase, suit was filed against E. A. Cockerham for the said amount of the inventory. The Court further finds that no accounting was ever made by the said Dorothy Cockerham to the said E. A. Cockerham for any of the funds and that same was a fraud upon the rights of the said E. A. Cockerham. The Court finds that this sum should be charged to the proportionate share owned by the said Dorothy Cockerham but subject to the community debts above set out."

(3) The trial court made the following findings concerning the 320 acre tract above-mentioned:

"The Court further finds that one-half thereof is community property and one-half the separate property of the said E. A. Cockerham by reason of his ownership to an undivided one-half interest thereof prior to his marriage with Dorothy Cockerham. The prior ownership being with a relative on a half-to-half basis and that a partition suit was brought wherein E. A. Cockerham and Dorothy Cockerham purchased the whole of the said 320 acres, and that said method was but a means of convenience provided by law to complete the purchase of the whole and secure a loan thereon.

"The Court further finds that in any event, the said E. A. Cockerham is entitled to an accounting for his one-half interest in said property due to his ownership prior to marriage."

(4) The court went on to find "that the parties own cattle, farm equipment, milk base and milking equipment and this property, along with the one-half of the 320 acres of land, is community property, and that the parties take same subject to the community debt (of $47,985.00), and that the share of the said Dorothy Cockerham be charged with the sum set out above ($9658.57) taken by her in fraud of the rights of the said E. A. Cockerham."

(5) The court further found that prior to and at the time of the marriage, E. A. Cockerham owned as his separate property, in addition to the real estate above set out, "work animals, farm equipment and fifty or sixty head of cattle."

Included in the Conclusions of Law, the trial court said:

"The act of Dorothy Cockerham, over the protest of E. A. Cockerham, in using community funds in her store adventure; and having a joint bank account with a third party male; and in transferring inventory from her store to the supposed store of the third party male without accounting for same, was a fraud upon the rights of E. A. Cockerham, and for which she is entitled to have charged against her interest."

The court further concluded that the community property was subject to the community debts (meaning the $47,985.00), and that Dorothy's share of the community property "is chargeable with the sums set out above (meaning the $9658.57) because of her using community property in defraud of the community estate."

The final conclusion of law stated:

"The share or portion of Dorothy Cockerham is subject to the divisions of this Court, and the rights of the Intervenor Trustee in the order as set out."

Appellant Dorothy Cockerham complains that the trial court erred: (1) in that the divisions of the property was so disproportionate as to be manifestly unjust so as to amount to an abuse of discretion; (2) in denying her a jury during the second trial; (3) in holding that one-half of the 320

acre tract to be the separate property of Appellee E. A. Cockerham; and (4) in holding that she (Appellant Dorothy Cockerham) took $19,317.14 from the community estate. We overrule these contentions.

The Cockerhams were married in 1949, when he was twenty-six years old and she was sixteen. At the time of their marriage he owned an undivided one-half interest in the 320 acre tract above-mentioned, subject to some indebtedness concerning which the record is silent. His brother owned the other undivided one-half. In addition thereto, E. A. Cockerham owned farm work animals, some farming equipment, and "fifty or sixty" head of beef cattle. He was farming and raising beef cattle when they married.

During their marriage they acquired the 198 acre tract hereinabove mentioned as their homestead, upon which they built a new home against which there was an indebtedness which constituted part of the community indebtedness found by the trial court to total $47,985.00. A few years after their marriage, he converted from farming and raising beef cattle over to dairying. As stated above, E. A. Cockerham owned an undivided one-half interest in the 320 acre tract, and his brother, H. R. Cockerham, owned the other half. In 1955, H. R. wanted to sell his half interest, and E. A. wanted to buy his brother out; however, E. A. had to get a loan on the place in order to pay his brother for his half. In order to accomplish these things, the two brothers went to a lawyer. Of course, neither brother was trained in the law and neither knew anything about separate property or community property. The lawyer filed a partition suit in behalf of E. A. and wife against H. R. and wife, and secured the court appointment of a receiver whereupon, the receiver sold the 320 acre tract to E. A. and Dorothy Cockerham at private sale under orders of the district court. The receiver's deed recites $22,700.00 consideration, of which $11,400.-00 cash was recited to have been paid by E. A. and Dorothy Cockerham, and $11,300.00 furnished by John Hancock Mutual Life Ins. Co., who reserved a vendor's lien thereon. The receiver's deed was shown to have been a conveyance to E. A. and Dorothy Cockerham, in both names as grantees. However, it was undisputed that E. A. and Dorothy Cockerham made no cash down payment at all, and it was also undisputed that Dorothy Cockerham knew nothing about what was taking place, and "paid no attention to it," other than that her husband was buying his brother out of the 320 acre tract. We have already recited the trial court's findings of fact and conclusions of law in this connection. There is nothing in the record to indicate any intention on E. A.'s part to make a gift of his separate property to the community or to his wife, nor to waive in any way his separate property rights therein. Unquestionably, the 320 acre tract was one-half the separate property of E. A. Cockerham, while the remaining one-half was the community property of E. A. and Dorothy Cockerham. In other words, there was a tenancy in common between his separate property and their community property. See Gleich v. Bongio (Com. App.1937) 128 Tex. 606, 99 S.W.2d 881, opinion adopted by the Supreme Court; Baize v. Baize (Eastland Tex.Civ.App. 1970) 460 S.W.2d 255, no writ history.

Section 5.02 of the Family Code, V.T.C.A. provides: "Property possessed by either spouse during or on dissolution of marriage is presumed to be community property." For a spouse to overcome this presumption and establish the separate nature of a given piece of property, it is the general rule that to discharge the burden imposed by the Statute a spouse must trace and clearly identify property claimed as separate property. McKinley v. McKinley (Tex.Sup.Ct.1973) 496 S.W.2d 540. Applying this rule to the case at bar, E. A. Cockerham could clearly trace his separate ownership in the 320 acre tract from the time of his marriage to the time of the divorce.

After the brother had been bought out of the 320 acre tract, a dairy barn was constructed thereon, milking equipment was purchased, and the beef cattle herd was changed over to a dairy herd, so that at the time of the divorce the parties had about 71 head of dairy cattle. E. A. Cockerham operated the dairy.

The parties had three children born to the marriage, two boys and a girl. The oldest boy died in 1969, leaving Kim, the eight year old daughter, and Kevin, the six year old son, at the time of the divorce.

In 1969, Dorothy Cockerham decided she wanted to operate a dress shop. Although her husband protested, he did not persist to the extent of causing a divorce. E. A. Cockerham and she got together $4,000.00 and she bought out a dress shop at Hurst, in Tarrant County, Texas. She operated the dress shop and lived at home and commuted back and forth about 120 miles each day. Five months or so later, she moved the business down the street from her first location. Then in 1970 she moved her dress shop to Burleson, in Johnson County, Texas. She had financial difficulties with the business from the beginning, which steadily worsened as time went on. E. A. Cockerham never had anything to do with the operation of the dress shop; however, he did help her borrow $5,000.00 for the business in 1971, to pay off some urgent debts. She had "fifteen or twenty" lawsuits filed against her by creditors. When bankruptcy threatened, she put in another shop in Burleson, Texas, in the name of De Ray Houston, a man who was a friend of hers who lived in Burleson. She transferred the fixtures and inventory of her Burleson shop to the shop in the name of Houston. She also had a joint bank account with Houston in an Everman bank.

Meanwhile, during the months after she went in the dress shop business, she spent less and less time at home with her husband and children. She and her husband had considerable marital difficulties, before and after their separation which occurred in the latter part of 1971.

On May 16, 1972, she was adjudicated a Bankrupt (pursuant to an involuntary petition filed by some of her creditors), by a U. S. District Court at Fort Worth, Texas. Theodore Mack was appointed Trustee in Bankruptcy, who intervened in the case at bar and is an Appellant herein. There is testimony in the record that the Trustee levied upon and sold the fixtures and inventory of the dress shop; however, there was no testimony showing what the assets brought or how much credit if any, the bankrupt was entitled to. Intervenor-Trustee offered proof that the claims against Dorothy Cockerham totalled $48,933.99, that the attorney's fees in the bankruptcy case were estimated to be $1000.00, that the Trustee's fees and expenses were estimated to be $20,000.00, and that it would therefore require $68,933.99 to pay all the creditors and the bankruptcy expenses in full.

■ We revert to Appellant Dorothy Cockerham's first point of error, in complaining that the trial court's division of the property was so disproportionate as to be manifestly unjust so as to amount to an abuse of discretion. We overrule this contention. As hereinabove stated, the homestead and household and kitchen furniture and furnishings were awarded to the husband; and other than this, all the community property was divided equally between the husband and wife, subject to the community debts of $47,985.00, with her share being further subject to $9658.57 and the claims of the Intervenor. In the light of this record, we cannot say the trial court abused his discretion. Indeed, in our opinion this was a fair division of the property.

Article 3.63 of the Family Code provides:

"In a decree of divorce or annulment the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage."

The court pronouncing the decree of divorce is invested with wide discretion in disposing of any and all property of the parties, separate or community, and its action in the exercise of such discretion should be corrected on appeal only where an abuse of discretion is shown in that the disposition made of some property is manifestly unjust and unfair. Hedtke v. Hedtke (Sup.Ct.1923) 112 Tex. 404, 248 S. W. 21; Hailey v. Hailey (Sup.Ct.1960) 160 Tex. 372, 331 S.W.2d 299; Grant v. Grant (Waco Tex.Civ.App.1961) 351 S.W.2d 897, error dismissed; Bryant v. Bryant (Waco Tex.Civ.App.1972) 478 S.W.2d 602, no writ history; Renfro v. Renfro (Waco Tex. Civ.App.1973) 497 S.W.2d 807, no writ history. We overrule Appellant Dorothy Cockerham's first point.

By her second point, Appellant Dorothy Cockerham complains that the trial court denied her a jury trial during the second trial, after which judgment was entered dividing the property. We overrule this point. She demanded a jury trial and her brief asserts she paid a jury fee. As stated above, trial was had to a jury, and pursuant to the jury verdict the trial court on September 11, 1972, entered the judgment of divorce, providing for custody of the children and child visitations. Then a year later, in September 1973, the court again called the case for trial and heard further testimony without a jury, and entered the judgment of December 17, 1973, making a property division between husband and wife as well as making an adjudication of the property rights of the Intervenor Trustee in Bankruptcy.

The Family Code recognizes that "Either party may demand a jury trial." Sec. 3.61. Here, Appellant Dorothy Cockerham demanded a jury trial and she was furnished one by the trial court. However, before the charge was submitted to the jury, she did not request the submission of any special issues concerning the separate or community nature of the property in controversy, or any other issues concerning property division. Nor did she object to the failure of the trial court to submit any such issues. Under this state of the record, she has waived this point of error. Rule 279, Texas Rules of Civil Procedure.

Moreover, when the case was called up for trial on the property division in September, 1973, she made no objection to the trial court proceeding to trial without a jury, and after entry of the judgment of property division, she filed a request for findings of fact and conclusions of law, and made complaint for denial of a jury trial for the first time in a motion for new trial. Her second point is overruled.

Her third point, complaining of the trial court's holding one-half of the 320 acre tract to be Appellee E. A. Cockerham's separate property, has already been discussed, and is overruled.

Her fourth and last point complains of the trial court's holding that she took $19,317.14 from the community estate. During the jury trial, the facts were fully developed on the issue of whether Appellant Dorothy Cockerham had made gifts of property to De Ray Houston. The court submitted Special Issue No. 3 to the jury which inquired:

"Do you find from a preponderance of the evidence that Dorothy Cockerham has made gifts of property to De Ray Houston?" To this issue the jury answered "no." Therefore the trial court's finding that she did take $19,317.14 from the community estate is in conflict with the jury's answer to Special Issue No. 3. The testimony was sharply conflicting on this issue. The trial court had the power to disregard the above jury finding and make the finding that she did take $19,317.14 from the community estate, since the jury's answer to Special Issue No. 3 was advisory only.

The trial court is not bound by the verdict of the jury in dividing the estate of the spouses in a divorce case. Such a verdict is advisory only and the trial court

may in its discretion disregard the jury findings and divide the estate in such a manner as seems just and right under the facts as they may appear to the court. Becker v. Becker (El Paso Tex.Civ.App.1927) 299 S.W. 528, no writ history; Hamm v. Hamm (Fort Worth Tex.Civ.App.1942) 159 S.W.2d 183, no writ history; Bagby v. Bagby (Amarillo Tex.Civ.App.1945) 186 S.W. 2d 702, no writ history. We overrule Appellant Dorothy Cockerham's fourth point.

The Intervenor-Appellant Trustee in Bankruptcy appeals on five points of error, asserting the trial court erred: (1) in failing to include as community debts the sum of $68,933.99 necessary to pay the creditors of the estate of Dorothy Cockerham, a bankrupt, in full; (2) in holding that all of the property subject to the joint management and control of the husband and wife was not subject to the debts due the creditors of the estate of Dorothy Cockerham; (3) in holding that one-half of the 320 acre tract was the separate property of the husband (we have already discussed this point and have overruled same); (4) in holding that all of the 320 acre tract was not subject to the debts due creditors of the estate of Dorothy Cockerham; and (5) in holding that indebtedness secured by a lien on the homestead and the 320 acre tract would be paid out of other property prior to payment of debts due creditors of Dorothy Cockerham's estate. We overrule all these contentions.

We will discuss Intervenor's first and second points together for convenience. By his first point Intervenor contends that the creditors of Dorothy Cockerham in the bankruptcy court and as represented herein by Intervenor as Trustee are entitled to be satisfied out of the entire community property that is non-exempt, instead of out of Dorothy Cockerham's one-half of the community property as ordered by the trial court. By his second point Intervenor contends in effect that all the community property was subject to the joint management and control of the husband and wife and was therefore subject to the claims of the bankruptcy creditors of Dorothy Cockerham. We do not agree with these contentions.

A discussion of these problems requires a review of the pertinent sections of the Family Code, Vernon's Texas Codes Annotated, which bear upon same, which are as follows:

"Section 5.22. Community Property: General Rules. (At the time this case was tried, and before the amendment effective January 1, 1974, this section read as follows):

"(a) During marriage, each spouse has the sole management, control, and disposition of the community property that he or she would have owned if single, including but not limited to:

(1) personal earnings;

(2) revenue from separate property;

(3) recoveries for personal injuries; and

(4) the increase and mutations of, and the revenue from, all property subject to his or her sole management, control, and disposition.

"(b) If community property subject to the sole management, control, and disposition of one spouse is mixed or combined with community property subject to the sole management, control and disposition of the other spouse, then the mixed or combined community property is subject to the joint management, control, and disposition of the spouses, unless the spouses provide otherwise by power of attorney or other agreement in writing.

"(c) Except as provided in Subsection (a) of this section, the community property is subject to the joint management, control, and disposition of the husband and wife, unless the spouses provide otherwise by power of attorney or other agreement in writing."

"Section 5.24. Protection of Third Persons.

"(a) During marriage, property is presumed to be subject to the sole management, control, and disposition of a spouse if it is held in his or her name, as shown by muniment, contract, deposit of funds, or other evidence of ownership, or if it is in his or her possession and is not subject to such evidence of ownership.

"(b) A third person dealing with a spouse is entitled to rely (as against the other spouse or anyone claiming from that spouse) on that spouse's authority to deal with the property if:

(1) the property is presumed to be subject to the sole management, control, and disposition of the spouse; and

(2) the person dealing with the spouse:

(A) is not a party to a fraud upon the other spouse or another person; and

(B) does not have actual or constructive notice of the spouse's lack of authority."

"Section 5.61. Rules of Marital Property Liability.

"(a) A spouse's separate property is not subject to liabilities of the other spouse unless both spouses are liable by other rules of law.

"(b) Unless both spouses are liable by other rules of law, *the community property subject to a spouse's sole management, control, and disposition is not subject to:*

(1) * * *

(2) *any nontortious liabilities that the other spouse incurs during marriage.* (emphasis supplied).

"Sec. 5.62. Order in Which Property is Subject to Execution.

"(a) A judge may determine, as he deems just and equitable, the order in which particular separate or community property will be subject to execution and sale to satisfy a judgment, if the property subject to liability for a judgment includes any combination of:

(1) a spouse's separate property;

(2) community property subject to a spouses' joint management, control, and disposition;

(3) community property subject to the other spouse's sole management, control, and disposition; and

(4) community property subject to the spouses' joint management, control, and disposition.

"(b) In determining the order in which particular property will be subject to execution and sale, the judge shall consider the facts surrounding the transaction or occurrence upon which the suit is based."

■ Applying the above sections of the Family Code to the facts of the case at bar, we are of the opinion and hold that the farming and dairy business operated by the husband on the 320 acre tract was under the sole management and control of the husband E. A. Cockerham; and therefore under Section 5.61, community property consisting of an undivided one-half of the 320 acres, the milking equipment, cattle, milk base, and farm equipment, was not subject to the "nontortious liabilities" of the wife, Dorothy Cockerham, same being the claims of the bankruptcy creditors of Dorothy Cockerham represented by Intervenor-Trustee in Bankruptcy. The dairy operation was located on the 320 acre tract which was nearby but not contiguous to the 198 acre homestead tract. It was in the possession and control of the husband. The wife took no part in operating the dairy, particularly since the year 1969 when she entered the dress shop business. There is no evidence that the creditors in bankruptcy ever relied on E. A. Cockerham's credit or upon any community property under his management and control. It is undisputed that after she first entered the dress shop business and commuted some 120 miles each business day that she was not home except at nights and

on Sundays, and as time went on she spent even less time than that with her husband and children.

The trial court is presumed to have made all necessary fact findings in support of his judgment; and this court will not set same aside if there is any evidence to support same. Point 2 of Intervenor's Brief acknowledges that the trial court made an implied finding that the dairying and farming operation was under the sole management and control of the husband. There is evidence the dairying and farming operation on the 320 acres was under the sole management and control of the husband and we so hold; hence under Sec. 5.-61 of the Family Code, the community property of the husband was not subject to the nontortious liabilities of the wife.

By his fourth point, Intervenor-Trustee contends that all the 320 acre tract should have been subjected to the claims of her creditors in bankruptcy. As stated above, the trial court found an undivided one-half of the 320 acres to be the separate property of the husband E. A. Cockerham and the other one-half to be community property. We have affirmed this holding of the trial court and have already stated our reasons therefor. This being so, the wife's creditors in bankruptcy under Subsection (a) of Section 5.61 could not subject the husband's separate property to the wife's liabilities. Then under Subsection (b) of Section 5.61. the husband's one-half of the community one-half of the 320 acres would not be subject to these creditors for the reasons already stated herein.

By Intervenor's fifth and last point he asserts the trial court erred in holding that indebtedness secured by a lien on the homestead and the 320 acre tract would be paid out of other community property prior to payment of the claims of the creditors of the wife's bankruptcy. We overrule this contention. The indebtedness on this property including the old debt, the new debt incurred with the purchase of the 320 acre tract from the Receiver, and that incurred in connection with purchase of the 198 acre homestead was combined in a single note upon which a balance of $36,200.-00 was due at the time of the divorce. The trial court required the payment of this $36,200.00 out of the community one-half of the 320 acres and the community personal property. We have already reviewed Section 3.63 of the Family Code and the other authorities bearing upon this problem, and hold that this constituted a proper exercise of the trial court's discretion.

Judgment of the trial court is affirmed.

Affirmed.

HALL, J., dissenting.

HALL, Justice (dissenting).

I respectfully dissent. In my opinion the one-half of the dairy properties found and declared by the trial court to be community property was under the joint management, control, and disposition of Mr. and Mrs. Cockerham, albeit he possessed and managed the dairy at all pertinent times.

Without dispute, the community dairy properties were purchased with what are now classed as joint management community funds. The dairy properties have never met, and do not now meet, any of the classes of community property characterized in Section 5.22(a), V.T.C.A., Family Code, as community property subject to the sole management, control, and disposition of a spouse. Paragraph (c) of Section 5.22 provides that all community property not listed in paragraph (a) thereof is joint management community, absent a contrary arrangement between the spouses which we do not have here.

The provision in Section 5.24 of the Family Code that, during marriage, property is presumed to be subject to the sole management, control, and disposition of a spouse if it is held in his or her name or if it is in his or her possession, does not, in

my opinion, operate to convert joint management community property to sole management community property and thereby exempt it from liability of community debts created by the spouse out of possession. See Coghlan v. Sullivan, (Tex.Civ. App.—El Paso, 1972, no writ history) 480 S.W.2d 229, 230. According to the terms of this statute, the presumption provided therein is intended to protect non-fraudulent third persons[1] who have dealt with a spouse in sole possession of joint management community property from claims of the other spouse, or another claiming from the other spouse, that the spouse in possession lacked authority to deal with the property as sole management property.

The wife is now the husband's equal as to joint management community property. Cooper v. Texas Gulf Industries, Inc., (Tex.Sup.1974) 513 S.W.2d 200. Section 5.61(c) of the Family Code subjects joint management community property to the liabilities incurred by either spouse before or during marriage. And, paragraph (a) of § 110 of The Bankruptcy Act provides that the trustee in bankruptcy "shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition [in bankruptcy], except insofar as it is to property which is held to be exempt, to all of the following kinds of property wherever located: . . . (5) property . . . which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered . . ." 11 U.S.C.A. § 110.

I would sustain the trustee's first two points of error, reverse the trial court's judgment insofar as it exempts the community dairy properties from liability for Mrs. Cockerham's debts, and render judg-

ment that these properties are liable for the debts in question along with the other community debts. In all other respects I agree with the majority and would affirm the judgment.

---

1. By Acts 1973, 63rd Leg., p. 1606, ch. 577, Sec. 27, eff. Jan. 1, 1974, the heading of Section 5.24 was changed from "Presumption" to "Protection of Third Persons." Other changes, immaterial here, were also made at that time. The caption of the amendatory Act stated its purpose to be for "amending Section 5.24, relating to the protection of third persons."