**Fay Robinson SMOOT, Appellant,**

v.

**Lloyd SMOOT, Jr., Appellee.**

**No. 19544.**

Court of Civil Appeals of Texas, Dallas.

June 7, 1978.

Charles H. Robertson, Robertson & Wilkinson, Dallas, for appellant.

Barton E. Bernstein, Hockberg, Bernstein & Skor, Reba Graham Rasor, Raggio & Raggio, Inc., Dallas, for appellee.

GUITTARD, Chief Justice.

In this divorce case, tried without a jury, the court made a division of the property unsatisfactory to the wife. On this appeal she attacks the finding of the trial court that certain land, which was an asset of a partnership between the husband and his father, was the husband's separate property. We hold that the record sustains the trial court's finding.

The facts are undisputed. The divorce decree divides the community property of Fay Smoot and Lloyd Smoot, Jr. and lists other assets that are declared to be the separate property of the respective parties. The values of the various items of property, both community and separate, are stated by the judge in findings of fact. According to these values, which are not challenged here, the community assets allotted to Fay Smoot had an aggregate value of $111,427 and those allotted to Lloyd Smoot, Jr. had a value of $93,251. The decree ordered Lloyd to pay community debts of $4,470 and also to pay Fay $12,500 in cash within thirty days from entry of the judgment. Accordingly, the total property allotted to Fay, not considering her separate property, was $123,927, and the net community property received by Lloyd, after deducting the debts and the amount of this cash payment, was $76,281. Thus Fay received the equivalent of 62% of the community property, leaving Lloyd with 38%. The values of the separate property listed aggregate $133,137 for Fay and $106,387 for Lloyd. The principal asset listed as his separate property is an undivided one-half interest in a tract of land designated as the "South Haskell property," which the evidence shows to be worth at least $80,000. This is the asset which Fay contends should have been treated as community property and included in the division of the community assets.

The trial court found that Lloyd's interest in the South Haskell land was the result of a gift from his father. More specifically,

the court found that in 1948, less than three years after the parties were married, Lloyd's father bought a tract of sixty acres of land for $60,000, paying $25,000 in cash and signing a note for $35,000, which he subsequently paid; that Lloyd was never liable for this indebtedness and did not make any contribution to its payment; that contemporaneously with acquisition of the land, Lloyd's father began to keep a ledger in the name of "Smoot & Son;" that Lloyd made no contribution to Smoot & Son either in capital or cash, nor did he render any services or labor of any type; that no consideration of any type passed from Lloyd to his father and any interest he may have had in Smoot & Son was the result of a gift from his father; that Smoot Homes, Inc., in which Lloyd and his father owned stock (Lloyd's shares having been given to him by his father), developed and sold 54 acres of the South Haskell property, leaving six acres undeveloped; that the rental from the land was paid in to Smoot & Son; that Lloyd's father managed Smoot & Son and made gifts to Lloyd of the monies received; that in July, 1967, Lloyd and his father, as executors of his mother's estate, and his father individually, executed a deed conveying to Lloyd an undivided interest in the remaining South Haskell land; that Lloyd gave no consideration for this conveyance; that Lloyd's interest in Smoot & Son had a value of $7,000. This interest, as well as Lloyd's half interest in the land, valued at $80,000, was listed in the separate property set apart to Lloyd in the divorce decree.

More generally, the court found that the division effected in the decree was fair, just and equitable and that the award to each party of his or her separate property, as effected in the judgment, was "fair, just and equitable . . . considering all matters before it, including the source of the funds expended, the nature of the gift to each of the parties of the separate property set forth herein, and the nature of the inception of the title in and to said property."

The evidence shows that Lloyd's father kept the partnership ledger for "Smoot & Son" in his own hand continuously from the time he acquired the land until the time of the trial. The purchase price of the land, including both the down payment and the amount of the note, was listed in this ledger. From time to time, lots were sold to Smoot Homes, Inc. and the proceeds of these sales were entered in the ledger. Rents from the land were received and shown, as well as various dealings in securities. Expenses were shown, including office and legal expenses. Distributions of profits, including long-term gains, were made to Lloyd and his father, and advances were made to Lloyd in the amount of approximately $25,000 in addition to the distribution of profits. The undisputed evidence shows that at the time of trial, the principal assets of Smoot & Son was the six acres left of the South Haskell property, which was then under lease to Auto Convoy Company.

The court's finding of a gift to Lloyd of an interest in this land is supported by recitals in the 1967 deed to Lloyd from his father and the executors of his mother's estate. This deed describes the undivided half interest and recites:

"This conveyance is made in acknowledgment by the Grantor, Lloyd Smoot, that the aforedescribed properties have heretofore been held in his name under deed of conveyance dated June 14, 1948 executed by Pauline G. Tholl, as independent executrix and sole devisee under the will of F. J. Tholl, deceased, to Lloyd Smoot, as shown in Dallas County, Texas Deed Records, Volume 2992, page 250, which property said Lloyd Smoot states has, since the aforesaid date, belonged jointly in partnership between Lloyd Smoot and Lloyd Smoot, Jr., notwithstanding the fact that the said property has been listed in the name of Lloyd Smoot only."

We review this decree under the Family Code, which gives the trial court broad discretion to "order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of [the parties]." Tex.Family Code Ann. § 3.63 (Vernon 1975). Our role

is to determine whether there has been an abuse of discretion. *McKnight v. McKnight*, 543 S.W.2d 863, 866 (Tex.1976).

Fay Smoot contends that the trial court abused its discretion because the court erred in characterizing Lloyd Smoot, Jr.'s partnership interest in Smoot & Son as his separate property and also in characterizing the land, which was a partnership asset, as his separate property. She argues that since the partnership of Smoot & Son was formed after the parties married, Lloyd's interest is presumed to be community property and could not have been a gift from his father because one person by himself cannot create a partnership and then give an interest in it to another. She contends further that since the Uniform Partnership Act, Tex.Rev.Civ.Stat.Ann., art. 6132b, § 28–A(1) (Vernon 1970), provides that a partner's rights in specific partnership property are not community property, then neither can they be separate property; consequently, the land in question was partnership property rather than separate property, and since his interest in the partnership was community property, it should have been taken into account as such in dividing the community estate.

■ We do not agree that Lloyd's interest in the partnership was necessarily community property because the parties were married when the partnership was formed. A partner's interest in a partnership without assets is neither separate nor community because no property exists which may be characterized as one or the other. When property is contributed to the partnership, each partner is a co-owner of each specific item of property, holding as a tenant-in-partnership, Tex.Rev.Civ.Stat. Ann., art. 6132b, § 25 (Vernon 1975). The community or separate nature of each partner's interest depends on the source of the property. If a married partner contributes community property, or if partnership assets are accumulated from rents or profits, then, to that extent, his interest is community property, even though such rents or profits may have resulted from the use of separate property. *See Hardee v. Vincent*, 136 Tex. 99, 147 S.W.2d 1072, 1073–74 (1941). On the other hand, if a married partner contributes separate property, then his interest in the partnership is separate property to that extent, and any appreciation in its value as a result of general economic conditions, as distinguished from labor and effort beyond that required for preservation of the separate property, remains separate property. *Norris v. Vaughan*, 152 Tex. 491, 260 S.W.2d 676, 681 (1953); W. DeFuniak & M. Vaughn, Principles of Community Property, §§ 73, 80 (1971).

In the present case the partnership from its inception was the result of the paternal benevolence of the elder Smoot. When he acquired the property in his own name, he made no formal deed of gift of the half interest to Lloyd Smoot, Jr. He was meticulous, however, in showing the land as an asset in the partnership ledger and in showing also the source of the funds used to acquire it. He testified that he gave Lloyd an undivided half interest. Whether he gave that interest to Lloyd, who contributed it to the partnership, or contributed it directly to the partnership for Lloyd's benefit, his intent was clear and the result was the same. Lloyd's entire interest, initially, was a gift. After the elder Smoot's wife died in 1967, he made a record of Lloyd's interest by joining with the executors of his wife's estate in formally conveying this half interest to Lloyd, reciting that it "belonged jointly in partnership between Lloyd Smoot and Lloyd Smoot, Jr." Thus, any problem concerning lack of a formal deed of gift in 1948 was obviated, and once again the intent was clear. Although the elder Smoot was originally the owner of the land, he intended from the beginning to give a half interest to Lloyd and intended for Lloyd to have a half interest in the partnership of Smoot & Son. Lloyd paid no consideration for that interest and contributed few services, if any, to the partnership enterprise.

■ Under this evidence, the trial court was justified in finding that Lloyd's interest, whether it was an interest in the land or an interest in the partnership, resulted

entirely from the benevolence of the elder Smoot. Although Fay Smoot may have had a community interest in the partnership (as distinguished from partnership assets) to the extent of any assets derived from profits of the partnership, Lloyd's interest in the partnership to the extent of one-half of the value of the land was the result of a gift from his father and was properly treated as his separate property.

If the trial court made a technical error in treating the land as an asset belonging to Lloyd individually, as distinguished from an asset of the partnership in which Lloyd had an interest, the error is harmless because it would not affect the division in the divorce decree. If Lloyd's interest in the partnership had been regarded as including an undivided one-half interest in the land, to that extent it would have been separate property for the reasons already stated. Under neither interpretation of the facts could it have been properly regarded as community property which Fay was entitled to have included in the division of the community estate.

No problem of tracing is presented here, as in *Cox v. Cox*, 439 S.W.2d 862 (Tex.Civ. App.—San Antonio 1969, no writ). It is undisputed that the six-acre tract in question is a part of the same land bought by Lloyd's father in 1948. If Lloyd's interest in the land, or in the partnership to the extent that the land was a partnership asset, was separate property in 1948, it was still separate property at the time of this trial.

No specific attack is made in this court on the trial court's finding that Lloyd's interest in the partnership (other than the land) was separate property worth $7,000, although Fay suggests that this interest may have included rentals and other income in which she had a community interest. The ledger shows that the principal receipts of the partnership over the years were the proceeds of sales of lots to Smoot Homes, Inc. Since we hold that Lloyd's interest in the partnership was initially his separate property, his interest in the proceeds of these sales was also separate. Although

the receipt of rentals may have added an element of income in which Fay had a community interest, the trial court was justified in concluding from the partnership records, which are detailed and complete, that distributions to the partners had more than offset any accumulation of profits other than those attributable to gains from sales of the land. At least, the court was warranted in finding that under these circumstances a division of assets based on this assumption was "just and right, having due regard for the rights of the parties." *Cf. Bell v. Bell*, 513 S.W.2d 20, 22 (Tex.1974) (award of stock in corporation to husband as his separate property affirmed, notwithstanding wife's claim that increase in stockholders' equity during marriage was community property).

Fay Smoot makes another attack on the division of property in the divorce decree. She points out that in May, 1964, Lloyd's father credited Lloyd's account in Smoot & Son with $30,000. The father testified that this credit was made as forgiveness of prior indebtedness from Lloyd to Smoot & Son and was intended as a gift to both Lloyd and Fay. Thus Fay argues that she was entitled to half of this amount and that the trial court failed to consider it in dividing the estates of the parties.

We cannot agree that at the time of the divorce this credit represented an asset that Fay was entitled to have divided. It did not enhance the value of the partnership, as she insists, since it resulted in a reduction of the partnership assets at that time. Neither did it represent any specific item of property to be divided between Fay and Lloyd. As forgiveness of prior indebtedness, evidently created by advances to Lloyd over and above his share of the partnership profits, this credit was presumably made in cancellation of a community debt. To the extent of that forgiveness, therefore, Fay has already benefited equally with Lloyd. Consequently, the trial judge did not err in failing to include it in his division of the community property.

Affirmed.