**J. Nelson ROACH, Appellant,**

v.

**Jodi Ann ROACH, Appellee.**

**No. 07–82–0101–CV.**

Court of Appeals of Texas,
Amarillo.

March 30, 1984.

Rehearing Denied May 23, 1984.

George Whittenburg, Whittenburg, Whittenburg & Schachter, Amarillo, for appellant.

Robert L. Templeton, Templeton & Garner, Amarillo, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

REYNOLDS, Chief Justice.

J. Nelson Roach brings this appeal from a judgment, rendered with the aid of a jury verdict, decreeing the dissolution of his 16 November 1974 ceremonial marriage to Jodi Ann Roach and a division of the estate of the parties. He presents, with sixteen points of error, complaints to the jury's failure to find a 17 March 1972 common law marriage between the parties, to certain jury findings, to the trial court's classification of specific items of property, to the court's refusal to award him any reimbursement for community funds used to benefit Mrs. Roach's separate property, to the exclusion of evidence, and to the court's division of the properties. Mrs. Roach resists the complaints, but she has proposed a conditional reformation of the judgment.

Notwithstanding the joinder of all of the issues, it is appropriate only to address the common-law-marriage issue before we express the rationale why the trial court erred in finding that a material portion of the real estate, evidenced to be co-owned partnership property, was community property, and in awarding that property to Mrs. Roach in the division of the estate of the parties. The errors dictate a reversal and remand as to the property division.

In the trial court, Mr. Roach sought to establish, but the jury failed to find, that a common law marriage existed since 17 March 1972 between him and Mrs. Roach.[1] On appeal, Mr. Roach contends, with his twelfth point of error, that the jury's negative answer to the common law inquiry, special issue no. 1, an issue on which he had the burden of proof, is against the great weight and preponderance of the evidence.[2]

To establish the common law marriage alleged, Mr. Roach had the burden to prove (1) an agreement presently to be husband and wife, (2) living together as husband and wife, and (3) holding each other out to the public as husband and wife. Estate of *Claveria v. Claveria*, 615 S.W.2d 164, 166 (Tex.1981). In determining whether, as Mr. Roach contends, the jury's failure to find that he carried his burden is against the great weight and preponderance of the evidence, we must review and consider all of the evidence

---

1. Subsequent to the trial court proceedings, Mrs. Roach remarried and now is Mrs. Morrow, but she will be referred to by her former married name.

2. Mr. Roach couples this point with, and as the predicate for, his thirteenth and fourteenth points by which he challenges, for legal and factual insufficient evidence, the jury's findings that properties deeded to Mrs. Roach between the alleged common law marriage date of 17 March 1972 and the ceremonial marriage date of 16 November 1974 were the separate properties of Mrs. Roach.

bearing on the matter. *Traylor v. Goulding*, 497 S.W.2d 944, 945 (Tex.1973).

It is undisputed that Mr. and Mrs. Roach began living together in 1971 while she was still married to her first husband, and they lived together until the divorce action was filed. Mrs. Roach obtained a divorce from her first husband on 17 March 1972, the date of the common law marriage alleged by Mr. Roach, and Mr. and Mrs. Roach were ceremonially married on 16 November 1974.

The record contains testimony from two former employees of Mrs. Roach that Mr. and Mrs. Roach were neither married nor proclaimed they were married until their ceremonial marriage in 1974. The evidence shows that on 14 September 1972, Mr. Roach wrote a check payable to the order of Jodi Bruce; in November of 1972, Mr. Roach completed a country club membership application as a single man; on 1 April 1974, a letter received from a bank was addressed to Jodi A. Bruce & J. Nelson Roach; and as of 30 September 1974, at least one savings account was maintained in the name of Jodi Bruce.

In giving a deposition, Mr. Roach testified that he was married on 16 November 1974; yet, it remains unclear whether he was referring to the ceremonial or common law marriage. Mr. Roach further testified that he did not remember telling anyone, including his mother and sons, that he was married prior to the ceremonial marriage, but he stated that he and Mrs. Roach agreed to be married in the "eyes of God" and that he did "hold her out as ... being married to her." However, when Mr. Roach filed his original petition for divorce, he alleged that they "were married during the month of November, 1975 (*sic*)"; he did not allege the 17 March 1972 common law marriage until he filed his first amended petition in October of 1981.

On the other hand, the evidence shows 1972 and 1973 amended joint income tax returns in the name of J. Nelson Roach and Jodi A. Roach, as well as a letter written by Mrs. Roach on 11 February 1974 to the Texas Real Estate Commission stating that she was recently married and requesting the name on her Real Estate Broker's License be changed to Jodi Bruce Roach. The evidence also includes an assumed name certificate dated 11 March 1974 for J & J Enterprises, a partnership formed by the Roaches, signed by Jodi Bruce Roach and J. Nelson Roach.

In explanation, Mrs. Roach testified that she used the Roach name prior to the ceremonial marriage because she was embarrassed that they were living together, that she signed the joint income tax returns at Mr. Roach's request without reading them, and that she "lied" in telling the Texas Real Estate Commission that she was recently married. She also testified that Mr. Roach did not contend there was a common law marriage until after he was confronted with the partnership agreement which stated that her separate property deeded to the partnership would remain her separate property.

 Although a common law marriage may be proved by the conduct of the parties in living together and representing to others that they are married, from which an agreement to marry may be inferred, still each case of a claimed common law marriage must be determined upon its own facts. Estate of *Claveria v. Claveria, supra;* Tex.Fam.Code Ann. § 1.91(b) (Vernon 1975). In the claimed common law marriage here, there is a conflict in the evidence whether the parties held themselves out to the public to be husband and wife and, thus, whether there was an agreement to marry. The jury, as the exclusive judge of the facts proved, the credibility of the witnesses, and the weight to be given their testimony, was in the best position to resolve the conflict. *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792, 796 (1951). After considering all of the evidence which was before the jury when it resolved the conflict, we cannot say the jury's failure to find that Mr. Roach established all of the elements of a common law marriage is so against the great weight and preponderance of the evidence as to be manifestly

wrong and unjust. The twelfth point of error is overruled.

With his fourth point, Mr. Roach complains that the trial court's finding that the real property legally described as Lot No. 5, Block No. 7, Crestview Unit No. 2, in Amarillo, Potter County, Texas, and located at 4223 West 2nd Street in Amarillo, is community property is not supported by legally sufficient evidence or, alternatively, is against the great weight and preponderance of the evidence. And with his fifth point, Mr. Roach contends that the court erred as a matter of law in awarding the realty to Mrs. Roach because the uncontroverted evidence establishes that it is his separate property.

At the outset, we are confronted with Mrs. Roach's objections that there are no pleadings, and no jury submission or finding, that the realty was Mr. Roach's separate property. Notwithstanding the lack thereof, we are not persuaded, as Mrs. Roach argues, that these are obstacles which prevent Mr. Roach from raising his complaints and contention.

■ The attitude toward pleadings in divorce actions always has been one of liberal construction, particularly when the pleadings concern property division. *Lindsey v. Lindsey*, 564 S.W.2d 143, 145 (Tex. Civ.App.—Austin 1978, no writ); *Bagby v. Bagby*, 186 S.W.2d 702, 704-05 (Tex.Civ. App.—Amarillo 1945, no writ); *Fain v. Fain*, 6 S.W.2d 403, 406 (Tex.Civ.App.—Galveston 1928, writ dism'd). This attitude is understandable when it is remembered that the trial court is charged with making "a division of the estate of the parties," *i.e.*, community property only, *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 139 (Tex. 1977), "in a manner that the court deems just and right, having due regard for the rights of each party ...." Tex.Fam.Code Ann. § 3.63(a) (Vernon Supp.1984). Thus, although there is the presumption, albeit rebuttable, that property possessed by either spouse during or on dissolution of the marriage is community property, Tex.Fam. Code Ann. § 5.02 (Vernon 1975), the court, to discharge its duty, may permit evidence under general pleadings as to the character and nature of both community and separate property. *Schreiner v. Schreiner*, 502 S.W.2d 840, 846 (Tex.Civ.App.—San Antonio 1973, writ dism'd); *Cox v. Cox*, 439 S.W.2d 862, 864–65 (Tex.Civ.App.—San Antonio 1969, no writ).

■ Here, although Mrs. Roach alleged that she was possessed of separate property, Mr. Roach did not allege that the West 2nd Street realty is his separate property; however, in his application for a temporary restraining order, he requested that Mrs. Roach be restrained from "[s]elling, transferring, ... any of the parties' property, ... whether the same be separate, community or mixed." Each of the parties prayed for general relief, and Mrs. Roach did not specially except to Mr. Roach's pleadings on the ground of generality.

Similar pleadings have been held sufficient, particularly in the absence of a special exception, to support the introduction of evidence as to the character and nature of all property, both community and separate, possessed by the parties so that the court could determine and make the required division of the estate of the parties. *Lindsey v. Lindsey, supra*. Moreover, Mrs. Roach did not object to the introduction of evidence as to the character and nature of the West 2nd Street property. The issue, then, was effectively tried by consent. *Zimmerman v. Zimmerman*, 348 S.W.2d 239, 240 (Tex.Civ.App.—San Antonio 1961, no writ).

■ The failure to submit the issue to the jury and obtain a finding thereon is of no moment. The trial court's failure to include in its charge an issue inquiring whether the realty is community or separate property merely waived a jury trial on the issue, *Cockerham v. Cockerham*, 514 S.W.2d 150, 156 (Tex.Civ.App.—Waco 1974), *aff'd in part, rev'd in part on other grounds*, 527 S.W.2d 162 (Tex.1975), which is advisory only. *Id.*, 527 S.W.2d at 173. The trial court retains the power and authority to divide the estate of the parties, Tex.Fam.Code Ann. § 3.63(a) (Vernon

Supp.1984), but the power and authority of the court is limited to a division of the community estate. *Cameron v. Cameron,* 641 S.W.2d 210, 214 (Tex.1982). Hence, neither the lack of specific pleadings of separate property nor the absence of a jury submission and finding is a bar to our consideration of Mr. Roach's fourth and fifth points.

The record shows a deed dated 5 August 1970, a date prior to any claimed marriage of the parties, conveying the West 2nd Street property to J. Nelson Roach. After the parties were married, the deed was delivered in July of 1977, when "the payment of the purchase price" of $2,500 was made from community funds, and it was recorded 3 August 1977. At the time of the hearing in December of 1981, the property was valued at either $27,000 or $29,750.

In 1976 and prior to the delivery of the deed, Mr. Roach executed a deed conveying the property to J & J Enterprises, the partnership of the parties. Although the partnership agreement stated that Mrs. Roach's separate property deeded to the partnership would remain her separate property and that her conveyance to the partnership was for management purposes only, the agreement contains no equivalent statement pertaining to a conveyance by Mr. Roach.

Mr. Roach testified that he bought the property "for a total of costs" under a lease-option for a seven year period. He had a deed prepared at the time and placed in escrow. Although he did not elaborate on the conditions of the escrow, he said the purpose of the lease-option was to write off the cost as an expense instead of depreciating the property over a longer period of time. The tax returns for the years 1972 through 1975 reflect some expense items which Mr. Roach identified as lease payments on the property, but the returns themselves do not identify the items as lease payments for this property.

■ To prevail in the trial court, Mr. Roach had the burden to prove that the West 2nd Street property is his separate property; however, the court made the adverse finding that it is community property. Then, to sustain his fourth-point complaint that the evidence is legally insufficient to support the court's finding, and to sustain his fifth-point contention that the uncontroverted evidence establishes the realty is his separate property, Mr. Roach must demonstrate two things from the record. First, the record must reveal there is no evidence of probative force in support of the trial court's finding; second, the evidence in the record must establish as a matter of law that the realty is Mr. Roach's separate property. *Holley v. Watts,* 629 S.W.2d 694, 696 (Tex.1982).

Mrs. Roach points to the evidence that the deed was delivered and recorded in 1977 after the parties were married, and that the purchase price was paid with community funds when the deed was delivered. Therefore, she argues, not only is there the presumption under the law that the realty is community property, but the evidence further shows that the title passed during marriage, which impresses the community character on the property.

■ Given the presumption in Tex.Fam. Code Ann. § 5.02 (Vernon 1975), it invokes a rule of law that compels the fact finder to reach the conclusion that the property is community in the absence of evidence to the contrary. *See Farley v. M M Cattle Company,* 529 S.W.2d 751, 756 (Tex.1975). Hence, the presumption places upon the party against whom it operates the burden of producing evidence to overcome it. *Combined American Insurance Company v. Blanton,* 163 Tex. 225, 353 S.W.2d 847, 849 (1962). Upon the introduction of the contrary evidence, the presumption, which is not evidence, ceases to exist, *Empire Gas & Fuel Co. v. Muegge,* 135 Tex. 520, 143 S.W.2d 763, 767 (1940), and is not to be weighed or treated as evidence. *Combined American Insurance Company v. Blanton, supra.*

■ Moreover, it is a familiar principle of law that the separate or community character of property is determined not by

the acquisition of the final title as Mrs. Roach argues, but by the origin of title to the property. *Jensen v. Jensen*, 665 S.W.2d 107, 109, 27 Sup.Ct.J. 256, 258 (1984). The origin or inception of title occurs when a party has a right of claim to the property by virtue of which title is finally vested. *Strong v. Garrett*, 148 Tex. 265, 224 S.W.2d 471, 474 (1949).

■ Of course, the trial court, as the judge of the credibility of the witnesses and the weight to be given their testimony, was privileged not to credit the testimony of Mr. Roach, an interested witness, unless it is clear, direct, positive, and uncontradicted by any other witness or attendant circumstances. *Sandoval v. Hartford Cas. Ins. Co.*, 653 S.W.2d 604, 607 (Tex.App.—Amarillo 1983, no writ). However, the 1970 deed itself cannot be disregarded, for its execution is the basis of Mr. Roach's separate property claim and its delivery is the basis of Mrs. Roach's community property claim.

■ The deed was executed in the manner prescribed by law, thereby invoking every presumption that some interest passed. *Coker v. Roberts*, 71 Tex. 597, 9 S.W. 665, 667 (1888). Its delivery seven years after its execution signifies the performance of the conditions on which it was executed, or, as Mr. Roach testified without challenge or contradiction from any source, placed in escrow under the lease-option; therefore, the title acquired as evidenced by the deed reverts to and vests at the time it was placed in escrow. *Cowden v. Broderick & Calvert*, 131 Tex. 434, 114 S.W.2d 1166, 1169 (1938). This obtains even though the performance of the conditions of escrow were not completed and the deed was not delivered until after the parties were married. *Strong v. Garret, supra; Creamer v. Briscoe*, 101 Tex. 490, 109 S.W. 911, 913 (1908). Consequently, the evidence compels the application of the principle announced in the cited cases that the inception of the title was in Mr. Roach in 1970 and before his marriage to Mrs. Roach, although his title matured into a full title after the marriage.

Even though the title to the West 2nd Street property originated as the separate property of Mr. Roach, Mrs. Roach nevertheless contends that Mr. Roach's 1976 conveyance of the property to J & J Enterprises, the parties' partnership and the source of the community funds paid when the 1970 deed was delivered in 1977, alone supports the finding that the realty is community property. We cannot validate the contention, but it operates to further the inquiry into the nature and ownership of the property at the time the divorce was granted.

■ By his 1976 deed, Mr. Roach conveyed the property to "J & J ENTERPRISES" without expressing any prior or contemporaneous intention that the realty would not be partnership property. The Texas Partnership Act provides that "[a]ll property ... acquired by purchase or otherwise, on account of the partnership, is partnership property." Tex.Rev.Civ.Stat. Ann. art. 6132b § 8(1) (Vernon 1970). Then, by force of other provisions of the Act, Mr. and Mrs. Roach, as the only partners, become co-owners of the property, holding as tenants in partnership, § 25(1), but their rights in the property were not community property, § 28–A(1), since Mr. Roach's conveyance to the partnership was not a conveyance to the community estate. *Smoot v. Smoot*, 568 S.W.2d 177, 180 (Tex. Civ.App.—Dallas 1978, no writ).

■ Under this record, then, the evidence conclusively establishes the West 2nd Street property to be partnership property co-owned by Mr. and Mrs. Roach. As such, it was excluded from the court's power and authority to divide the parties' community estate, Tex.Fam.Code Ann. § 3.63(a) (Vernon Supp.1984); *Cameron v. Cameron, supra,* and beyond the power of the court to award specific partnership property to one of the spouses as community property. *McKnight v. McKnight*, 543 S.W.2d 863, 867 (Tex.1976).

■ Consequently, the community property presumption was rebutted, there is no evidence of probative force to support the trial court's finding that the West 2nd

Street realty is community property, and the court erred as a matter of law in awarding the realty to Mrs. Roach as a division of the community property. To this extent, we sustain Mr. Roach's fourth and fifth points of error.

The West 2nd Street partnership property included in the community estate represents, at a minimum, 13% of the total value of the value of the properties divided and was, in the indicated concept of the court's division, a material consideration. Its award to Mrs. Roach constitutes reversible error in the division of the estate of the parties. *Id.*

We, of course, have no authority to render a judgment dividing the property of the spouses, a discretion reserved to the trial court; we may only remand the cause. *Id.* It follows that it is unnecessary to consider the other appellate issues, for any decision reached would not affect the disposition of this appeal and would be on issues which, under our holding, are not likely to arise in the same context under the evidence that, of necessity, will be different in the event of another trial.[3]

Although the issue of divorce cannot be severed from a division of the estate of the parties in the trial court, *Marriage of Johnson*, 595 S.W.2d 900, 902–03 (Tex. Civ.App.—Amarillo 1980, writ ref'd n.r.e.), neither party has attacked the decretal portion of the judgment granting the divorce. In the circumstances of this appeal, our Supreme Court sanctions the affirmance of the part of the trial court's judgment decreeing the divorce and the reversal of that part of the judgment decreeing a division of the property with a remand of the cause. *McKnight v. McKnight, supra*, at 864, 868.

Accordingly, that part of the trial court's judgment decreeing that J. Nelson Roach

and Jodi Ann Roach are divorced is affirmed; otherwise, the judgment is reversed and the cause remanded to the trial court.

## ON MOTION FOR REHEARING

By her motion for rehearing, Mrs. Roach raises only one matter that was not determined by our original decision and requires further comment. She alleges that Mr. Roach has received, accepted and sold some of the property awarded him by the trial court's judgment and, having accepted the benefits of the decree, he cannot now deny its validity under *Matter of Marriage of Rutherford*, 614 S.W.2d 498 (Tex.Civ.App. —Amarillo 1981, writ dism'd). In support of her allegation, she tendered a certified copy of her deed conveying to him all of her right, title and interest in and to the six tracts of real property awarded him out of the community estate by the court's judgment, and certified copies of two deeds by which he conveyed two of the same pieces of property to third parties.

In response, Mr. Roach asserts, by affidavit, that although he has contested the judgment, he obtained the property eleven months after the rendition of judgment because of financial necessity, and conveyed the two tracts in compliance with contracts for deed by which he and Mrs. Roach previously had sold five of the properties. Furthermore, he represents that the effect of his deeds was to convert the community estate's interest in the properties into promissory notes secured by deeds of trust, and that the community's interest remains essentially unchanged. He then argues that since in her brief, Mrs. Roach not only conceded he was entitled to receive what he received in the judgment but was entitled to receive $25,353.15 more,[4] he is not es-

---

3. By a motion to be determined on the consideration of the merits of the appeal, Mrs. Roach requested that we disregard a supplemental transcript filed by Mr. Roach; however, inasmuch as the supplemental transcript was not considered in the disposition of the appeal, the motion has become moot and it is overruled for that reason.

4. The $25,353.15 figure is Mrs. Roach's calculation, made when Mr. Roach disputed the amounts of reimbursement and property values included in the judgment, upon which she based her proposed conditional reformation of the judgment (in a lesser sum) mentioned in the first paragraph of the original opinion; but, since the matter neither influenced our original disposition of the appeal nor controls our deci-

topped to prosecute his appeal for further recovery, *Carle v. Carle,* 149 Tex. 469, 234 S.W.2d 1002, 1004 (1950), particularly because he accepted the benefits of the judgment out of financial duress, *Haggard v. Haggard,* 550 S.W.2d 374, 376 (Tex.Civ. App.—Dallas 1977, no writ); *McCartney v. Mead,* 541 S.W.2d 202, 205 (Tex.Civ.App.— Houston [1st Dist.] 1976, no writ), and no prejudice to Mrs. Roach has been shown. *Haggard v. Haggard, supra.*

In reply, Mrs. Roach filed her affidavit by which she challenges, and asserts the converse of, certain statements of fact contained in Mr. Roach's affidavit. In particular, she questions his claim of financial duress, and she contradicts his claim that the community estate's interest was not changed by his sale of one particular tract of realty.

In brief, then, Mrs. Roach has exhibited the deeds to now invoke the principle of estoppel which denies one an appeal from a judgment when he has voluntarily accepted the benefits of it. *Carle v. Carle, supra; Matter of Marriage of Rutherford, supra.* Mr. Roach seeks to avoid the estoppel by showing that his situation fits the *Carle* exception that estoppel does not operate when a reversal of the judgment cannot possibly affect his right, conceded by Mrs. Roach, to the benefits accepted, or that the *Carle* rule is inapplicable because his acceptance of the judgment's benefits under the spur of financial necessity was not a voluntary acceptance, *Cole v. Cole,* 568 S.W.2d 152, 154–55 (Tex.Civ.App.—Dallas 1978, no writ), and because Mrs. Roach would not be prejudiced by the appeal to the extent that the wrong could not be remedied upon retrial. *Haggard v. Haggard, supra.*

■ Nevertheless, under the presentation, the question of Mr. Roach's voluntary acceptance of the judgment's benefits is not conclusively answered; indeed, the presentation does no more than merely raise the fact issue of estoppel. Although we have the power to ascertain such matter of fact as may be necessary to the proper exercise of our jurisdiction, Tex.Rev.Civ. Stat.Ann. art. 1822 (Vernon 1964); *Glidden Company v. Aetna Casualty & Surety Company,* 155 Tex. 591, 291 S.W.2d 315, 317 (1956), we are unable to hold that the presentation establishes the fact that Mr. Roach is estopped to prosecute his appeal. *Accord, Coplin v. Coplin,* 579 S.W.2d 278, 279 (Tex.Civ.App.—Dallas 1979, no writ).

Mrs. Roach's motion for rehearing is overruled.

sion on rehearing, it was not, and will not be, additionally addressed.